Charles J. Harder (SBN 184593)
Jordan Susman (SBN 246116)
HARDER MIRELL & ABRAMS L.L.P.
132 S. Rodeo Drive, Fourth Floor
Beverly Hills, California 90067
Telephone: (424) 203-1600
E-mail: CHarder@hmafirm.com
        JSusman@hmafirm.com

Attorneys for Plaintiffs
John J. Hurry, Justine Hurry, Investment
Services Corporation, BRICFM LLC

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| John J. Hurry and Justine Hurry, as husband and wife, Investment Services Corporation, an Arizona corporation, BRICFM dba Corner of Paradise Ice Cream Store, a California limited liability company,<br><br>Plaintiffs,<br><br>v.<br><br>Financial Industry Regulatory Authority, Inc., a Delaware corporation,<br><br>Defendant. | Case No. 3:17-mc-80026-LB<br><br>(D. Ariz. No. 14-cv-02490-PHX-ROS)<br><br>**PLAINTIFFS' OPPOSITION TO THIRD PARTY WILLIAM MEAGHER'S MOTION TO QUASH SUBPOENA**<br><br>Date: April 6, 2017<br>Time: 9:30 a.m.<br>Courtroom: C |

25454449

Plaintiffs John Hurry, Justine Hurry, Investment Services Corporation ("ISC"), and BRICFM dba Corner of Paradise Ice Cream Store ("BRICFM") (collectively, "Plaintiffs") submit this Opposition to Motion to Quash Subpoena filed by third party William Meagher (the "Motion") (Docket no. 1).

## I.

## INTRODUCTION

William Meagher ("Mr. Meagher") has asked this Court to quash a subpoena (the "Subpoena") served on him by Plaintiffs that seeks deposition testimony[1] that goes to the heart of a lawsuit filed by Plaintiffs' against the Financial Industry Regulatory Authority, Inc. ("FINRA"). Plaintiffs' lawsuit against FINRA alleges that FINRA wrongfully provided false and defamatory information about Plaintiffs to Mr. Meagher that Mr. Meagher subsequently published in a series of online articles.

Plaintiffs noticed Mr. Meagher's deposition for March 1, 2017 – the last day for fact discovery in their action against FINRA and after the depositions of thirteen other witnesses. Instead of appearing at his duly noticed deposition, Mr. Meagher filed the current Motion, which is filled with legal boilerplate and incorrect conjecture about the scope and purpose of Mr. Meagher's deposition. Mr. Meagher's Motion completely ignores Plaintiffs' numerous concessions in the parties' meet and confer, namely: Plaintiffs unilaterally offered to withdraw the document requests that accompanied the Subpoena, and Plaintiffs agreed not to ask Mr. Meagher to reveal his confidential source(s). Mr. Meagher's Motion is, therefore, fatally flawed and should be denied by the Court.

**California's shield law protects a journalist's sources; it does not allow a journalist to evade appearing at a duly noticed deposition**. The plain language of California's shield law, as codified in the California Constitution (article I, section 2, subdivision b) and Evidence Code section 1070 (collectively, the "Shield Law"), provides

---

[1] Plaintiffs have offered to, and hereby do, withdraw the document requests that accompanied the Subpoena.

a non-party journalist witness with protection against compelled disclosure of either unpublished information, or the source of information, whether published or unpublished. The Shield Law "only provides an immunity against contempt, rather than a more expansive privilege against testifying, as exists in other states." *Rancho Publications v. Superior Court*, 68 Cal. App. 4th 1538, 1543 (1999). Mr. Meagher's request to quash the Subpoena and not appear at his duly noticed deposition does not fall under the protections of the Shield Law. Were Plaintiffs to ask Mr. Meagher questions at the deposition that called for privileged information, the proper procedure would be to object to such questions at the deposition.

**Plaintiffs will not seek information protected by California's shield law**. Prior to filing his Motion, Mr. Meagher indicated through counsel that he will not provide information regarding the sources of the defamatory material in his articles. Consequently, Plaintiffs agreed not seek such information at Mr. Meagher's deposition. Plaintiffs, however, will seek, and are entitled to know, information that is not protected by California's shield law, including: whether Mr. Meagher wrote every word in the articles; whether Mr. Meagher wrote the headlines; whether the articles contain hyperbole, opinion, or conjecture; Mr. Meagher's methods for fact checking allegations in his stories; specific steps Mr. Meagher took to fact check the allegations in his articles, and; Mr. Meagher's employer's guidelines and policies for fact-checking sources. None of the foregoing issues fall within in the scope of any press shield, and Plaintiffs are entitled to Mr. Meagher's testimony regarding these topics.

**The information Plaintiffs seek from Mr. Meagher is crucial to their claims**. Plaintiffs have alleged causes of action against FINRA for defamation and false light. It is therefore essential that Plaintiffs receive information from Mr. Meagher regarding the defamatory allegations in his articles. For example, FINRA has asserted that Plaintiffs' "claims for defamation and false light fail because the alleged representations upon which those claims are based are merely statements of opinion." Consequently, Plaintiffs are

1   entitled to ask Mr. Meagher if the allegations in his articles are, in fact, mere statements of
2   opinion.
3       **Plaintiffs exhausted all alternative sources for information before scheduling**
4   **Mr. Meagher's deposition**.  Mindful of the rules governing third party subpoenas,
5   Plaintiffs scheduled Mr. Meagher's deposition for the final day for fact discovery in the
6   FINRA lawsuit.
7       In sum, Mr. Meagher's excuses for not appearing at his duly noticed deposition are
8   not supported by any legal principle, and Mr. Meagher's Motion should be denied.

## II.

## STATEMENT OF RELEVANT FACTS

Plaintiffs John and Justine Hurry (collectively, the "Hurrys") are successful entrepreneurs who own or operate several businesses in the Western United States, including plaintiffs ISC and BRICFM.  (Susman Decl. ¶ 2, Exh. 1 at ¶ 2).  In November of 2012, FINRA conducted a raid of ISC's offices and coerced access to the computers and hard-drives the Hurrys use for their non-securities related businesses as part of an inquiry into alleged securities violations, but found no evidence sufficient to give rise to an enforcement action against the Hurrys.  (*Id*. at ¶¶ 73, 84-101).

On or about September 17, 2013, Mr. Meagher of the *Deal Pipeline* wrote the first of four articles using information that Plaintiffs believe was leaked to Mr. Meagher by FINRA.  (*Id*. at ¶ 177).  Citing "internal documents" Meagher obtained from FINRA, Meagher described "a series of reports Finra sent to the SEC in 2012 and 2013."  (*Id*.).  Mr. Meagher's articles contained a number of false statements and also gave publicity to confidential information concerning Plaintiffs that placed Plaintiffs before the public in a false light, including *inter alia*:

- The Hurrys and/or their businesses were engaged in money laundering;
- The Hurrys and/or their businesses were under investigation by the FBI, and were the target of criminal investigations;

1     • The Hurrys and/or their businesses were involved in a "pump-and-dump"
2  scheme to artificially raise the price of certain stocks before selling their shares;
3     • The Hurrys and/or their businesses allowed certain shareholders to trade in
4  violation of internal policies and were provided special perks.
5     • The Hurrys and/or their businesses caused employees to disregard so-called
6  "red flags" regarding certain stock trades and failed to follow up on those purported red
7  flags.
8  (*Id*. at ¶¶ 326-331, 380-385).
9        On November 10, 2014, Plaintiffs sued FINRA in the District of Arizona (case no.
10 14-cv-02490-PHX-ROS) (the "FINRA Action"), alleging claims for defamation and false
11 light.
12       On February 7, 2017 FINRA produced more than 8,000 pages of documents, or
13 approximately 73% of all documents produced by FINRA in the FINRA Action.  (Susman
14 Decl. ¶ 3).  Between February 17 and February 28, 2017, the parties in the FINRA Action
15 conducted 13 separate depositions in Phoenix, New York, and Washington D.C.  (Susman
16 Decl. ¶ 4).
17       On February 14, 2017, Plaintiffs issued the Subpoena to Mr. Meagher, which was
18 duly served upon him the next day, February 15, 2017.  (Susman Decl. ¶¶ 5, 6 Exhs. 2, 3).
19 The Subpoena set Mr. Meagher's deposition for March 1, 2017 in San Francisco – the last
20 day for fact discovery in the FINRA Action.  (*Id.*).
21       On February 27, 2017 at 4:35 p.m., counsel for Mr. Meagher sent a letter to
22 Plaintiffs' counsel, objecting to Mr. Meagher's deposition.  (Susman Decl. ¶ 7 Exh. 4).
23       On February 28, 2017, counsel for Mr. Meagher and Plaintiffs met and conferred
24 telephonically regarding Mr. Meagher's deposition.  Plaintiffs' counsel offered to
25 unilaterally withdraw the requests for production that accompanied the Subpoena, and
26 informed Mr. Meagher's counsel that Plaintiffs would not ask Mr. Meagher to divulge the
27 sources of the defamatory statements in his articles.  (Susman Decl. ¶ 8).
28

1  Mr. Meagher's counsel refused to entertain any compromise that would allow Mr.
2  Meagher to appear at his duly noticed deposition and instead filed the current Motion.
3  (Susman Decl. ¶¶ 8, 9).

### III.

### ARGUMENT

#### A. California's Shield Law Does Not Prohibit Enforcement Of The Subpoena

Mr. Meagher argues that California's Shield Law prohibits enforcement of the Subpoena. This argument fails for two reasons. First, the Shield Law protects a journalist from contempt for refusing to disclose unpublished information or the source of information. The Shield Law does not permit a journalist to decline to appear at a deposition. Second, the Shield Law does not allow a journalist to refuse to answer questions that fall outside the scope of the Shield Law.

California's Shield Law, as articulated in the California Constitution (article I, section 2, subdivision b) and Evidence Code section 1070 provides a non-party journalist witness with protection against compelled disclosure of either unpublished information, or the source of information, whether published or unpublished. *Mitchell v. Superior Court*, 37 Cal. 3d 268, 274 (1984). The Shield Law "only provides an immunity against contempt, rather than a more expansive privilege against testifying, as exists in other states." *Rancho Publications*, 68 Cal. App. 4th at 1543.

The Shield Law does not support Mr. Meagher's attempt to avoid testifying at his duly noticed deposition. Because Plaintiffs have expressly stated that they will not seek information protected by the Shield Law (e.g., the identity of Mr. Meagher's confidential source), there is simply no excuse for Mr. Meagher's refusal to sit for his deposition. Plaintiffs are entitled to ask, and Mr. Meagher is obligated to provide information that is not protected by the Shield Law, including:

- Did Mr. Meagher write every word in the articles?
- Did Mr. Meagher write the headlines that accompanied his articles?

- Do the articles contain hyperbole, opinion, or conjecture?
- What steps did Mr. Meagher take to fact check the allegations in his articles?
- What are the *Deal Pipeline*'s policies for fact checking stories?
- Did Mr. Meagher follow those policies?
- What are the *Deal Pipeline*'s policies for verifying sources?
- Did Mr. Meagher follow those policies?

None of the foregoing questions falls within the protections of the Shield Law, as discovery of the editorial process is not barred by the Shield Law (*see Mitchell*, 37 Cal. at 278-79), and an author's privilege to alter quotes is not unlimited (*see Bindrim v. Mitchell*, 92 Cal. App. 3d 61, (1979).

Moreover, the foregoing questions go to the heart of Plaintiffs' claims against FINRA, because FINRA has alleged that the defamatory statements are either true or statements of opinion and that no one at FINRA made defamatory statements to Mr. Meagher. (Susman Decl. ¶ 10 Exh. 5). If Mr. Meagher testified that he, or his employer, requires more than one source for any allegation in an article, it would significantly impact Plaintiffs' claims against FINRA, as it would indicate that there was more than one source for the allegations in Mr. Meagher's articles. (Susman Decl. ¶ 11).

The Court should, therefore, deny the Motion, and Mr. Meagher should sit for his duly noticed deposition forthwith.

**B.     The Federal Constitution And California Constitution Do Not Require The Court To Quash The Subpoena**

Mr. Meagher's second argument to evade compliance with the Subpoena is based upon the *qualified* constitutional privilege that allows a journalist to not disclose confidential sources or unpublished work product. This argument is a red herring, as Plaintiffs do not seek the disclosure of confidential sources or unpublished work product, and the five factors that courts look to for compelling disclosure of protected information are, therefore, irrelevant. Were Plaintiffs to ask a question that sought privileged

1 | information, the proper procedure would be for Mr. Meagher to assert the privilege at the
2 | deposition.

### IV.
### **CONCLUSION**

Mr. Meagher's Motion should be denied by the Court. Per the parties' meet and confer, Plaintiffs have withdrawn their requests for documents, and will not inquire about topics protected by the Shield Law. Mr. Meagher should sit for his duly noticed deposition forthwith and allow discovery to proceed in the FINRA Action.

DATED this 14th day of March, 2017.

HARDER MIRELL & ABRAMS LLP

By: _____

Jordan D. Susman
Attorneys for Plaintiffs

25454449

- 8 -

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing document has been furnished via e-mail this 14th day of March, 2017 to the following:

Joseph G. Adams
Carlie Tovrea
Snell & Wilmer LLP
One Arizona Center
400 East Van Buren, Suite 1900
Phoenix, Arizona 85004-22020

ctovrea@swlaw.com
jgadams@swlaw.com

*Attorney for Plaintiffs*

George Brandon
Gregory A. Davis
Gregory Schneider
SQUIRE PATTON BOGGS (US) LLP
One East Washington Street, Suite 2700
Phoenix, Arizona 85004

gregory.schneider@squirepb.com
gregory.davis@squirepb.com
george.brandon@squirepb.com

*Attorney for Defendants*

                                              /s/ Vivian Winn
                                              VIVIAN WINN