THOMAS R. BURKE (CA State Bar No. 141930)
thomasburke@dwt.com
DAVIS WRIGHT TREMAINE LLP
505 Montgomery Street, Suite 800
San Francisco, California  94111
Telephone:    (415) 276-6500
Facsimile:    (415) 276-6599

ELIZABETH A. MCNAMARA (*pro hac vice*)
lizmcnamara@dwt.com
JOHN M. BROWNING (*pro hac vice*)
johnbrowning@dwt.com
DAVIS WRIGHT TREMAINE LLP
1251 Avenue of the Americas, 21st Floor
New York, New York 10020
Telephone:  (212) 489-8230
Facsimile:    (212) 489-8340

Attorneys for Non-Party Journalist
William Meagher

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| John J. Hurry and Justine Hurry, as husband and wife; Investment Services Corporation, an Arizona Corporation, BRICFM LLC d/b/a Corner of Paradise Ice Cream Store, a California Limited Liability Company,<br><br>                              Plaintiffs,<br><br>        vs.<br><br>Financial Industry Regulatory Authority, Inc.,<br><br>                              Defendant. | Case No. 17-mc-80026-LB<br><br>(D. Ariz. No. 14-cv-04420-NC)<br><br>**REPLY BRIEF IN FURTHER SUPPORT OF MOTION TO QUASH SUBPOENA ISSUED FROM A CIVIL CASE PENDING BEFORE THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF ARIZONA AND SERVED ON NON-PARTY JOURNALIST WILLIAM MEAGHER**<br><br>Hearing Date:   April 6, 2017<br>Hearing Time:  9:30 a.m.<br>Courtroom C |

1

**TABLE OF CONTENTS**

2
Page

3
PRELIMINARY STATEMENT ................................................................................. 1

4
ARGUMENT ........................................................................................................... 3

5
I.    THE SUBPOENA MUST BE QUASHED BECAUSE PLAINTIFFS SEEK
      PRIVILEGED INFORMATION ABOUT MR. MEAGHER'S SOURCE(S) AND
6
      NEWSGATHERING ACTIVITIES ................................................................ 3

7
II.   THE FUTILE DEPOSITION PROPOSED BY PLAINTIFFS WOULD IMPOSE
      AN UNDUE BURDEN ON MR. MEAGHER AND MUST BE QUASHED.................. 7
8

9
CONCLUSION ....................................................................................................... 10

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

REPLY IN FURTHER SUPPORT OF MOTION TO QUASH SUBPOENA
Case No. 17-mc-80026-LB
4839-9760-6725v.3 0090219-000012

1

**TABLE OF AUTHORITIES**

2

Page(s)

3

**Cases**

4

*Baker v. Los Angeles Herald Examiner*,
    42 Cal. 3d 254 (1986) ........................................................................................ 8

5

*Hurry v. FINRA*,
    No. CV-14-02490-PHX-ROS, 2016 U.S. Dist. LEXIS 90147 (D. Ariz. Apr. 1, 2016) ............. 9

6

*Intermarine, LLC v. Spliethoff Bevrachtingskantoor, B.V.*,
    123 F. Supp. 3d 1215 (N.D. Cal. 2015) ...................................................... 7

7

*Jimenez v. City of Chicago*,
    733 F. Supp. 2d 1268 (W.D. Wash. 2010) ................................................... 1, 7

8

*Lemberg Law LLC v. Hussin*,
    No. 16-me-80066-JCS, 2016 U.S. Dist. LEXIS 76772 (N.D. Cal. June 13, 2016) ................ 6, 7

9

*Los Angeles Mem'l Coliseum Comm'n v. NFL*,
    89 F.R.D. 489 (C.D. Cal. 1981) ................................................................ 1, 6

10

*Mitchell v. Superior Ct.*,
    37 Cal. 3d 268 (1984) .................................................................. 4, 5, 6

11

*N.Y. Times v. Superior Ct.*,
    51 Cal. 3d 453 (1990) ...................................................................... 3

12

*Rancho Publ'ns v. Superior Ct.*,
    68 Cal. App. 4th 1538 (1999) ............................................................. 3, 6

13

*Rosato v. Superior Ct.*,
    51 Cal. App. 3d 190 (1975) ................................................................. 3

14

*Shoen v. Shoen*,
    5 F.3d 1289 (9th Cir. 1993) ................................................................. 4

15

*Shoen v. Shoen*,
    48 F.3d 412 (9th Cir. 1995) .............................................................. 4, 5

16

*Troy Grp. v. Tilson*,
    364 F. Supp. 2d 1149 (C.D. Cal. 2005) ...................................................... 8

17

*Trunk v. City of San Diego*,
    No. 06 CV 1597 LAB, 2007 U.S. Dist. LEXIS 67766 (S.D. Cal. Sept. 13, 2007) .................... 8

18

*Unigene Labs., Inc. v. Apotex, Inc.*,
    No. C 07-80218 SI, 2007 U.S. Dist. LEXIS 78410 (N.D. Cal. Oct. 10, 2007) .......................... 7

19

*VirnetX, Inc. v. Apple Inc.*,
    No. 14-mn-80013 RS (NC), 2014 U.S. Dist. LEXIS 130933 (N.D. Cal. Mar. 21, 2014) .......... 7

**Constitutional Provisions**

Cal. Const. art. I, § 2 .................................................................................................................. 3

**Rules**

Fed. R. Civ. P. 45(b)(3)(A)(iv) ................................................................................................... 7

Fed. R. Civ. P. 45(d)(1) .............................................................................................................. 2

Fed. R. Civ. P. 45(d)(3)(A)(iii) ................................................................................................... 6

REPLY IN FURTHER SUPPORT OF MOTION TO QUASH SUBPOENA
Case No. 17-mc-80026-LB
4839-9760-6725v.3 0090219-000012

Mr. Meagher respectfully submits this reply memorandum of law in further support of his motion to quash Plaintiffs' Subpoena.[1]

**PRELIMINARY STATEMENT**

There is but one controlling issue in Plaintiffs' remaining claims in the Arizona Action: was FINRA a source for statements in Mr. Meagher's Articles concerning whether Scottsdale bore any responsibility for a massive stock market fraud.  Even with their stripped down description of testimony they seek to elicit, it remains evident that Plaintiffs intend to use the proposed deposition as a backdoor route to obtaining Mr. Meagher's testimony on the subject of his confidential source(s) and his unpublished journalistic work product.  After Mr. Meagher filed his Motion to Quash the Subpoena, "a former employee of one of [Plaintiffs'] businesses" identified himself at his own deposition as Mr. Meagher's source for "the allegedly defamatory statements in [the Articles] that plaintiffs have erroneously attributed to FINRA."  Reply Declaration of Elizabeth A. McNamara ("McNamara Decl."), ¶6, Ex. A.  In light of this evidence, Plaintiffs' defamation claims against FINRA will be dismissed at summary judgment unless Plaintiffs can produce evidence that FINRA was an alternate source for the allegedly defamatory statements in the Articles. Accordingly, Plaintiffs persist with their Subpoena in the hope that Mr. Meagher's testimony will somehow suggest "there was more than one source for the allegations in Mr. Meagher's articles." Opp. Br. 7.  However, this information is obviously subject to statutory and constitutional protection:  as Plaintiffs have conceded, the law provides Mr. Meagher with an absolute privilege against being compelled to divulge any information about his confidential source(s).[2]

---

[1] Unless otherwise specified, capitalized and abbreviated terms will have the same definition that they had in Mr. Meagher's moving memorandum of law (Meagher Br.) and supporting declarations or in Plaintiffs' opposition brief (Opp. Br.) and supporting declarations.

[2] Mr. Meagher cannot be compelled to testify on the ground that an individual has now identified himself as the source for the allegedly defamatory statements in the Articles.  In quashing subpoenas seeking evidence from journalists, courts have rejected the "misconceive[d]" argument that the reporters' privilege no longer applies when "sources have voluntarily indicated that they were the ones who gave information to … reporters." *Los Angeles Mem'l Coliseum Comm'n v. NFL*, 89 F.R.D. 489, 494 (C.D. Cal. 1981).  Simply put, the "journalist's privilege belongs to the journalist alone and cannot be waived by persons other than the journalist." *Id. See also Jimenez v. City of Chicago*, 733 F. Supp. 2d 1268, 1272 (W.D. Wash. 2010) ("The privilege belongs to the journalist; not the information.").  Accordingly, Mr. Meagher maintains his right to refuse to

1    Nonetheless, employing a diversionary tactic calculated to evade the statutory and

2  constitutional protections afforded to journalists, Plaintiffs argue that they are entitled to depose

3  Mr. Meagher because they have withdrawn their document requests demanding unpublished

4  newsgathering materials and have ostensibly made a commitment not to "seek information

5  protected by the Shield Law (*e.g.*, the identity of Mr. Meagher's confidential source)."  Opp. Br. 2

6  n.1, 6.  The limited deposition Plaintiffs propose is still unlawful, however, because it cannot

7  possibly lead to the discovery of relevant, non-privileged information.  The only information

8  Mr. Meagher possesses that has any bearing on Plaintiffs' defamation and false light claims against

9  FINRA is the identity of his confidential source(s), but this is precisely the information Plaintiffs

10  have promised not to ask for.  The futility of Plaintiffs' proposed deposition is further underscored

11  by their inability to suggest any non-privileged questions for Mr. Meagher that are remotely

12  relevant to their defamation and false light claims against FINRA.  Plaintiffs' efforts to depose

13  Mr. Meagher at all costs should be seen for what they are:  the latest step in an ongoing, wide-

14  ranging campaign of harassment and retaliation against Mr. Meagher and his employer (*see*

15  Meagher Br. 7-8).  Given this plain purpose, there is no injustice in quashing the Subpoena.

16    In sum, since Plaintiffs have failed to identify any legitimate grounds for compelling

17  Mr. Meagher to testify at a deposition, the Court should quash the Subpoena to vindicate

18  Mr. Meagher's rights and prevent further harassment.[3]

19

20

21

22

23

24

25  answer questions concerning his source(s) and any other unpublished information relating to his
    newsgathering activities.

26    [3] In light of Plaintiffs' refusal to voluntarily withdraw their Subpoena even after it emerged

27  that the source for the allegedly defamatory statements was a former Scottsdale employee and not
    FINRA, Mr. Meagher reserves the right to move for sanctions under Rule 45(d)(1), including

28  reimbursement of the attorneys' fees incurred in bringing this motion.

REPLY IN FURTHER SUPPORT OF MOTION TO QUASH SUBPOENA
Case No. 17-mc-80026-LB
4839-9760-6725v.3 0090219-000012

**ARGUMENT**

**I.    THE SUBPOENA MUST BE QUASHED BECAUSE PLAINTIFFS SEEK PRIVILEGED INFORMATION ABOUT MR. MEAGHER'S SOURCE(S) AND NEWSGATHERING ACTIVITIES**

The Subpoena must be quashed because Plaintiffs' opposition reveals that Plaintiffs remain committed to discovering privileged information about Mr. Meagher's source(s) and newsgathering activities, despite their promises to limit their questioning to matters outside of the scope of the reporters' privilege.  As a threshold matter, courts have noted that the California Legislature, in enacting the Shield Law, "recognized the importance of maintaining a free flow of information and intended that the statute be given a broad rather than a narrow construction." *Rosato v. Superior Ct.*, 51 Cal. App. 3d 190, 217-18 (1975).  In order to provide the wide scope of protection envisaged by the Legislature, the California Shield Law "extends not only to the identity of the source but to the disclosure of any information, in whatever form, which may tend to reveal the source of the information." *Id.*  Aside from the absolute privilege for information related to the identity of sources, the wide-ranging scope of the Shield Law also covers "any unpublished information obtained or prepared in gathering, receiving or processing information for communication to the public."  Cal. Const. art. I, § 2; *see also Rancho Publ'ns v. Superior Ct.*, 68 Cal. App. 4th 1538, 1543 (1999) (extending protection to "all unpublished information" related to newsgathering "whether confidential or nonconfidential" and "whether published or unpublished"); *N.Y. Times v. Superior Ct.*, 51 Cal. 3d 453, 461 (1990) (reading Shield Law's statutory protection broadly and rejecting argument that scope was narrowly limited to "unpublished information … obtained in confidence").

Most (if not all) of the questions Plaintiffs identify as representative of what they would ask Mr. Meagher at his deposition call for information that falls squarely within the scope of the statutory Shield Law privilege.  For instance, Plaintiffs' questions about the "steps" Mr. Meagher took "to fact check the allegations in his articles" and whether Mr. Meagher followed *The Deal Pipeline*'s "policies for verifying sources" necessarily call for Mr. Meagher to reveal information about his use of confidential source(s) in researching the Articles.  Plaintiffs even admit that these

questions are designed to elicit privileged information about Mr. Meagher's source(s).  Although it is undisputed that Plaintiffs cannot directly ask about "the identity of Mr. Meagher's confidential source" (Opp. Br. 6), Plaintiffs explain that Mr. Meagher's deposition is necessary because "[i]f Mr. Meagher testified that he, or his employer, requires more than one source for any allegation in an article, it would significantly impact Plaintiffs' claims against FINRA, as it would indicate that there was more than one source for the allegations in Mr. Meagher's articles."  Opp. Br. 7.  In other words, Plaintiffs hope to use indirect lines of questioning to discover whether Mr. Meagher had more than one confidential source for the allegedly defamatory statements in the Articles, with the ultimate goal of establishing that FINRA was an alternate source for these statements.  This information is obviously privileged.  Accordingly, the Subpoena should be quashed so that Plaintiffs do not have an opportunity to work around the protections of the Shield Law and qualified privilege, as they evidently seek to do.

Plaintiffs also make no meaningful response to Mr. Meagher's arguments that the constitutional qualified privilege bars enforcement of the Subpoena.  Plaintiffs contend, without any legal support, that the protections of qualified immunity do not apply because "Plaintiffs do not seek the disclosure of confidential sources or unpublished work product."  Opp. Br. 7.  But contrary to Plaintiffs' bald assertion, the constitution offers broad protections against compelled disclosure of evidence related to confidential source(s) and newsgathering activities.  *See, e.g.*, *Shoen v. Shoen*, 5 F.3d 1289, 1292 (9th Cir. 1993) ("*Shoen I*") ("[W]hen facts acquired by a journalist in the course of gathering the news become the target of discovery, a qualified privilege against compelled disclosure comes into play.").  Moreover, qualified immunity can only be overcome with a showing that the discovery sought is "clearly relevant to an important issue in the case."  *Shoen v. Shoen*, 48 F.3d 412, 416 (9th Cir. 1995) ("*Shoen II*"); *see also Mitchell v. Superior Ct.*, 37 Cal. 3d 268, 284 (1984) ("[M]ere relevance is insufficient to compel discovery; disclosure should be denied unless the information goes to the heart of the plaintiff's claim.") (citation and quotation marks omitted).  Yet Plaintiffs have conceded that they will not ask Mr. Meagher any questions related to Mr. Meagher's source(s), which means that Plaintiffs will not ask Mr. Meagher any questions related to the only material issue in the Arizona Action that Mr. Meagher could

reasonably be expected to testify about (*i.e.*, whether or not FINRA was one of the confidential

sources for the Articles).  Moreover, the generic questions Plaintiffs propose in their brief

concerning *The Deal Pipeline*'s editorial practices are irrelevant on their face.  *See* p. 8, *infra*.

Accordingly, "[P]laintiffs' failure to establish clear relevance to an important issue is dipositive" of

the qualified immunity issue and requires the Subpoena to be quashed.  *Shoen II* at 417.

The following unrebutted factors set forth in Mr. Meagher's moving brief also weigh

heavily against enforcement of the Subpoena: Mr. Meagher is a third-party witness (as opposed to a

party), Mr. Meagher has a strong interest in preserving the integrity of his relationships with

confidential sources and Plaintiffs have failed to demonstrate that the allegedly defamatory

statements are false.  *See* Meagher Br. 15-19.  Moreover, despite Plaintiffs' unsupported claim that

they have "exhausted all alternative sources for information before scheduling Mr. Meagher's

deposition" (*id*. 4), Plaintiffs have failed to specifically demonstrate that Mr. Meagher is the only

remaining source of relevant information about his sources, as they are required to do in order to

overcome the privilege.  *Shoen I*, 5 F.3d at 1296 ("[B]efore disclosure may be ordered, the

requesting party must demonstrate that she has exhausted all reasonable alternative means for

obtaining the information.").

Similarly unavailing is Plaintiffs' argument that it is procedurally improper for the Court to

grant a motion to quash before Mr. Meagher has been deposed.  As anticipated (*see* Meagher Br.

14), Plaintiffs have asserted that Mr. Meagher must go through the motions of sitting for a

deposition because the Shield Law "only provides for an immunity against contempt rather than a

more expansive privilege against testifying."  Opp. Br. 6 (citation omitted).  To this end, Plaintiffs

insist that "the proper procedure" is for Mr. Meagher to voluntarily subject himself to a deposition,

at which time his attorneys can object to any "questions … that call for privileged information." *Id*.

3.  Ironically, in both of the cases Plaintiffs cite in support of their argument that the "Shield Law

does not allow a journalist to decline to appear at a deposition" (*Id*. 6), the subpoenas were quashed

before the reporters were forced to engage in the kind of token compliance Plaintiffs recommend

here.  In *Mitchell*, the California Supreme Court ultimately held that the constitutional qualified

privilege provided preemptive protection against enforcement of a subpoena duces tecum, even

REPLY IN FURTHER SUPPORT OF MOTION TO QUASH SUBPOENA
Case No. 17-mc-80026-LB
4839-9760-6725v.3 0090219-000012

though the court also found that the Shield Law technically does not apply until reporters are threatened with being found in contempt. *Mitchell*, 37 Cal. 3d at 284 (1984). The court in *Rancho Publications* declined to enforce another third-party subpoena duces tecum served on a reporter because the "highly attenuated relationship between [the information sought] and the defamatory writings" was insufficient to overcome constitutional qualified privilege. *Rancho*, 68 Cal. App. 4th at 1543. In other words, even in the very cases Plaintiffs rely on to support their argument that Mr. Meagher must appear, the subpoenas were actually quashed. Here, as in *Rancho* and *Mitchell*, it is perfectly appropriate for the court to quash Plaintiffs' Subpoena preemptively so that Mr. Meagher is not subjected to a futile deposition at which the only questions he will be permitted by his attorneys to answer are irrelevant to Plaintiffs' defamation claims against FINRA.

Courts have time and again rejected Plaintiffs' argument that their Subpoena cannot be quashed preemptively because the "proper procedure" would be for Mr. Meagher's attorneys to object to individual "questions at the deposition." Opp. Br. 3. In rejecting the argument that attorney-client privilege can be asserted only with respect "to specific … deposition questions," another court in this district noted that the piecemeal approach Plaintiffs suggest "would virtually nullify Rule 45(d)(3)(A)(iii), which *requires* the Court to quash a subpoena that 'requires disclosure of privileged or other protected matter,' and would be inconsistent with cases where courts have quashed deposition subpoenas that appear to be targeted at privileged subject matter." *Lemberg Law LLC v. Hussin*, No. 16-me-80066-JCS, 2016 U.S. Dist. LEXIS 76772, at *17 (N.D. Cal. June 13, 2016) (citations omitted); *see also Los Angeles Mem. Coliseum*, 89 F.R.D. at 496 ("Although it may make some sense for a journalist who is an actual party in a civil suit to appear and claim the [reporters'] privilege with regard to particular questions and documents, such a procedure should not be imposed on non-party journalists."). To allow Mr. Meagher's deposition to proceed would give Plaintiffs the opportunity to evade the reporters' privilege, either by asking about sourcing indirectly or by attempting to goad Mr. Meagher into inadvertently waiving his rights. This concern is especially pressing in light of Plaintiffs' acknowledgment that the purpose of Mr. Meagher's deposition is to gather evidence that FINRA was an alternate source for the allegedly defamatory statements in the Articles, even though this information is clearly privileged.

In sum, the Court should quash Plaintiffs' Subpoena so that Plaintiffs cannot force Mr. Meagher to sit for an opportunistic deposition designed to violate Mr. Meagher's statutory and constitutional rights.

## II.    THE FUTILE DEPOSITION PROPOSED BY PLAINTIFFS WOULD IMPOSE AN UNDUE BURDEN ON MR. MEAGHER AND MUST BE QUASHED

Since the limited deposition proposed by Plaintiffs would impose an undue burden on Mr. Meagher, the Federal Rules of Civil Procedure require that the Subpoena be quashed.  *See* Fed. R. Civ. P. 45(b)(3)(A)(iv) ("On timely motion, the court for the district where compliance is required must quash … a subpoena that … subjects a person to undue burden.").  Compelled discovery "of irrelevant information is an inherently undue burden" (*Jimenez v. City of Chicago*, 733 F. Supp. 2d at 1273) and, for this independent reason, federal courts routinely quash third-party deposition subpoenas that would produce only irrelevant testimony.[4]  Moreover, "[t]he Ninth Circuit has long held that nonparties subject to discovery requests deserve extra protection from the courts." *Lemberg Law*, 2016 U.S. Dist. LEXIS 76772, at *15 (citation and internal quotation marks omitted).  Accordingly, in order to justify the imposition of a deposition on a third-party witness like Mr. Meagher, "the party issuing the subpoena must demonstrate that the discovery sought is relevant." *VirnetX, Inc. v. Apple Inc.*, No. 14-mn-80013 RS (NC), 2014 U.S. Dist. LEXIS 130933, at *4 (N.D. Cal. Mar. 21, 2014).  By conceding that the Shield Law prohibits Plaintiffs from asking Mr. Meagher about his source(s), Plaintiffs have voluntarily foreclosed the only line of questioning that could produce evidence relevant to the dispositive issue in the Arizona Action – *i.e.*, whether or not FINRA was Mr. Meagher's source for the allegedly defamatory statements in the Articles.  Further, Plaintiffs are unable to shoulder their burden of showing how their limited deposition of Mr. Meagher would lead to the discovery of relevant evidence.

---

[4] *See, e.g., Lemberg Law*, 2016 U.S. Dist. LEXIS 76772, at *17 (quashing deposition subpoena and rejecting argument that third party deponent cannot assert privilege "except as to specific documents or deposition questions"); *Intermarine, LLC v. Spliethoff Bevrachtingskantoor, B.V.*, 123 F. Supp. 3d 1215, 1218 (N.D. Cal. 2015) (quashing subpoena where deposition testimony would be "duplicative and unnecessarily burdensome"); *Unigene Labs., Inc. v. Apotex, Inc.*, No. C 07-80218 SI, 2007 U.S. Dist. LEXIS 78410, at *9 (N.D. Cal. Oct. 10, 2007) (quashing "futile" deposition subpoena where "any information relevant to the controversy … falls within the protection of" privilege).

Despite their best efforts, Plaintiffs have not proposed a single question for Mr. Meagher that is remotely relevant to Plaintiffs' claims against FINRA.  *See* Opp. Br. 6-7 (listing eight proposed questions).[5]  The questions Plaintiffs put forward are framed as generic inquiries into The Deal's "editorial process," including whether Mr. Meagher writes headlines, what "[*The*] *Deal Pipelines'* policies [are] for fact checking stories" and whether "the articles contain hyperbole, opinion or conjecture."  *Id.*  Far from going "to the heart of Plaintiffs' claims" (*id.* 7), these questions have no bearing whatsoever on the allegations at issue in the Arizona Action, which contend that FINRA defamed Plaintiffs by leaking information to Mr. Meagher.  For example, Plaintiffs' aver that they are "entitled to ask Mr. Meagher if the allegations in his articles are, in fact, mere statements of opinion" (Opp. Br. 4).  Yet, whether Mr. Meagher believes any statement in an Article is an opinion, or not, is utterly irrelevant to the Arizona court's analysis.  It is black letter libel law that the determination of whether a challenged statement constitutes opinion "is a question of law to be decided by the court."  *Troy Grp. v. Tilson*, 364 F. Supp. 2d 1149, 1158 (C.D. Cal. 2005) (*quoting Baker v. Los Angeles Herald Examiner*, 42 Cal. 3d 254, 260 (1986)).  Similarly, Plaintiffs' question about whether Mr. Meagher wrote his Articles is redundant (in addition to being irrelevant) since Mr. Meagher has already affirmed that he wrote the Articles in his declaration annexed to this Motion to Quash.  *See* Meagher Decl. ¶¶5-7.  As established above, the remaining questions concern The Deal's fact-checking and editing procedures and are nothing more than thinly disguised efforts to identify Mr. Meagher's sourcing.

Even allowing the possibility that Plaintiffs could formulate a few relevant questions despite their failure to pose any in their opposition brief, Mr. Meagher still cannot be compelled to sit for a deposition in light of the marginal usefulness of his testimony on subjects other than the identity of the Article's confidential source(s).  *See e.g.*, *Trunk v. City of San Diego*, No. 06 CV 1597 LAB (WMc), 2007 U.S. Dist. LEXIS 67766, at *23 (S.D. Cal. Sept. 13, 2007) (subpoena should be quashed "[e]ven if … Plaintiffs' counsel were able to craft a few relevant and meaningful

---

[5] On closer inspection, Plaintiffs have only managed to come up with four questions, since the five questions about fact-checking and source verification are essentially duplicative.

REPLY IN FURTHER SUPPORT OF MOTION TO QUASH SUBPOENA
Case No. 17-mc-80026-LB
4839-9760-6725v.3 0090219-000012

deposition questions that did not run afoul of" privilege claims because "the extremely limited amount of … information … Plaintiffs might acquire does not tip the balance in favor of allowing [the] deposition" to go forward).  Forcing Mr. Meagher to answer minimally relevant questions unrelated to the identity of his sources would also contravene the admonition of the judge presiding over the Arizona Action that discovery should be "very carefully circumscribe[d] … to allow this case to quickly reach a resolution."  *Hurry v. FINRA*, No. CV-14-02490-PHX-ROS,  2016 U.S. Dist. LEXIS 90147, at *10-11 (D. Ariz. Apr. 1, 2016).

Last, assuming for the sake of argument Plaintiffs are somehow entitled to ask Mr. Meagher questions about *The Deal Pipeline*'s general editorial practices, this information can be provided without resorting to a deposition.  Plaintiffs contend that "Mr. Meagher's counsel refused to entertain any compromise that would allow Mr. Meagher to appear at his duly noticed deposition."  Opp. Br. 6.  What Plaintiffs misleadingly fail to acknowledge is that, before filing their Motion to Quash, Mr. Meagher's lawyers offered to explore the possibility of allowing Mr. Meagher to respond to written discovery.  McNamara Reply Decl. ¶5.  Plaintiffs never responded to this offer, however, and have doubled-down on their demand for a deposition.  *Id.*[6]  The only discernable purpose that a deposition on the subject of *The Deal Pipeline*'s editorial processes would serve is to waste time and money while placing Mr. Meagher at risk of inadvertently waiving his privilege or exposing himself to sanctions for contempt.  This kind of harassment is in keeping with Plaintiffs' history of litigation gamesmanship and should not be permitted by this Court.

In sum, while Plaintiffs may desire to subject Mr. Meagher to irrelevant questions at a futile deposition, Plaintiffs' modified Subpoena must be quashed to avoid imposing an undue burden and to avoid trivializing Mr. Meagher's statutory and constitutional right not to testify about his source(s).

---

[6] Of course, Mr. Meagher reserves the right to lodge objections for good cause to any written discovery served by Plaintiffs.  Given Plaintiffs' failure to suggest a single relevant, non-privileged question in their brief, it is highly likely that written questions will not lead to the discovery of relevant information.  Mr. Meagher therefore reserves the right to add the cost of responding to frivolous requests for information to any motion for sanctions he files in connection with this Motion to Quash.

REPLY IN FURTHER SUPPORT OF MOTION TO QUASH SUBPOENA
Case No. 17-mc-80026-LB
4839-9760-6725v.3 0090219-000012

## CONCLUSION

For the reasons set forth above, Mr. Meagher respectfully requests that this Court quash the Subpoena.

Dated:  March 21, 2017          DAVIS WRIGHT TREMAINE LLP
THOMAS R. BURKE
ELIZABETH A. MCNAMARA (*pro hac vice*)
JOHN M. BROWNING (*pro hac vice*)

By:    /s/ Thomas R. Burke
           Thomas R. Burke

Attorneys for Non-Party Journalist William Meagher

10