

132 S. RODEO DRIVE, FOURTH FLOOR
BEVERLY HILLS, CA 90212
424.203.1600 · WWW.HMAFIRM.COM

April 26, 2017

**VIA ECF & HAND DELIVERY**

The Honorable Laurel Beeler
Phillip Burton Federal Building
& United States Courthouse
450 Golden Gate Avenue
Courtroom C - 15th Floor
San Francisco, CA 94102

      Re:    **Hurry v. FINRA (Case No. 17-mc-80026-LB)**

Dear Judge Beeler:

      Pursuant to Your Honor's standing order, plaintiffs John Hurry, Justine Hurry, Investment Services Corporation, and BRICFM dba Corner of Paradise Ice Cream Store (collectively, "Plaintiffs") and third party William Meagher ("Mr. Meagher") submit this joint letter brief concerning discovery served upon Mr. Meagher by Plaintiffs. Counsel for the parties met and conferred telephonically about the subject of this letter on April 24, 2017.

### Statement of Unresolved Issue

      Plaintiffs are currently engaged in litigation against the Financial Industry Regulatory Authority, Inc. ("FINRA"), in the United States District Court, District of Arizona, Case No. 14-cv-02490-PHX-ROS (the "Arizona Action"). On February 15, 2017, Plaintiffs served Mr. Meagher with a Subpoena to Testify at Deposition in a Civil Action ("Subpoena") to take place on March 1, 2017. Mr. Meagher filed a motion to quash the Subpoena with this Court, which was granted on April 7, 2017 (the "April 7 Order").

      On April 12, 2017, Plaintiffs served Deposition by Written Questions on Mr. Meagher which contained 25 questions. On April 19, 2017, Mr. Meagher served Responses/Objections to the Deposition by Written Questions, in which he responded in full to one question, providing his name and information regarding his place of employment. Mr. Meagher interposed

{00079927;2}

The Honorable Laurel Beeler
April 26, 2017
Page 2

objections to the other 24 questions.[1]  The parties disagree whether Mr. Meagher must provide substantive responses to some, if not all, of the other 24 written deposition questions.

## Plaintiffs' Position

In its April 7 Order, the Court held:

> Mr. Meagher offers a compromise about general editorial practices; he notes that this information can be disclosed without a deposition.  He also offered to explore the possibility of responding to written discovery; the plaintiffs rejected that compromise. If the plaintiffs want to propound written discovery that is not geared toward privileged information, they may do so within seven days.

Consistent with the April 7 Order, Plaintiffs' propounded the Deposition by Written Questions, which asked Mr. Meagher about (1) his employer's "general editorial practices" (Questions 11-16, 19); (2) Mr. Meagher's personal editorial practices (Questions 20-23), and; (3) questions about the defamatory articles at issue in the Arizona Action that do not call for information protected by the Shield Law (Questions 2-10, 17, 18, 24, 25).

**Mr. Meagher must answer questions regarding his employer's general editorial practices**.  In preparing and serving the Deposition by Written Questions, Plaintiffs hewed closely to the April 7 Order and asked Mr. Meagher about his employer's general editorial practices concerning the use of opinions, rhetorical hyperbole, and conjecture in its news articles (Questions 11-13), who writes headlines (Question 14), its use of fact checkers (Questions 15 and 16), and the need for more than a singular source to support allegations in stories it publishes (Question 19).

These questions are well within the limits of the April 7 Order and Mr. Meagher's offer to provide information concerning general editorial practices.  Moreover, these questions do not begin to intrude upon the Shield Law, as they do **not** seek "unpublished information obtained in the newsgathering process." *Miller v. Sup. Ct.*, 21 Cal. 4th 883, 890 (1999).  The policies of Mr. Meagher's employer were not obtained in the newsgathering process from sources—they were presumably generated by Mr. Meagher's employer.

Questions 11-13 are relevant to Plaintiffs' claims in the Arizona Action because they may help defeat FINRA's affirmative defenses that its defamatory statements were mere opinion, hyperbole, or conjecture.  Questions 14-16 and 19 are relevant to Plaintiffs' claims because they may demonstrate that it is more likely than not that someone besides an employee of Plaintiffs provided defamatory information to Mr. Meagher.

---

[1] Per the Court's standing order, attached hereto as Exhibit 1 is Mr. Meagher's Responses/Objections to the Deposition by Written Questions, which contains the questions and Mr. Meagher's responses verbatim.

{00079927;2}

The Honorable Laurel Beeler
April 26, 2017
Page 3

**Mr. Meagher must answer questions regarding his own editorial practices**. Questions 20-23 ask Mr. Meagher whether he generally includes opinions, hyperbole, conjecture, and/or dramatic license in his articles. These questions do not seek "unpublished information obtained in the newsgathering process." *Miller v. Sup. Ct.*, 21 Cal. 4th 883, 890 (1999). These questions go to actions taken by Mr. Meagher with respect to articles that were published. Consequently, these questions are consistent with the Court's April 7 Order and they are outside the protections of the Shield Law.

Finally, Questions 20-23 are relevant to Plaintiffs' claims in the Arizona Action because they may help defeat FINRA's affirmative defenses that its defamatory statements were mere opinion, hyperbole or conjecture.

In sum, Mr. Meagher offered to answer questions about general editorial practices. If Mr. Meagher's offer was made in good faith, then Mr. Meagher must answer Questions 11-16 and 19-23 about his and his employer's general editorial practices.

### Plaintiffs' Proposed Compromise

Questions 2-10, 17, 18, 24, 25 seek information concerning how Mr. Meagher applied general editorial practices to the defamatory articles at issue in the Arizona Action and are therefore consistent with the April 7 Order. Plaintiffs are, however, willing to withdraw those questions if Mr. Meagher answers the more generalized questions regarding his and his employer's general editorial practices.

### Mr. Meagher's Position

This Court has already rejected the written questions proposed by Plaintiffs in its well-reasoned April 7 Order quashing Plaintiffs' Subpoena and should reaffirm that sound ruling by sustaining Mr. Meagher's objections. The April 7 Order states that Mr. Meagher's testimony is "relevant if it establishes that FINRA was the source of the information in Mr. Meagher's articles. But as the plaintiffs concede, that information is protected [by the reporters' privilege], and they cannot seek it." April 7 Order, 2. In an effort to work around the privilege, Plaintiffs argued in opposition to the motion to quash that they were nevertheless "entitled to ask Mr. Meagher if statements [in the articles] are opinion" and to ask other questions about "fact-checking, writing every word, policies about fact-checking and verifying sources, and following policies." *Id*. The Court flatly rejected the lines of questioning Plaintiffs proposed. "Other topics," the Court held, "do not bear on [Plaintiffs'] claims against FINRA. Or rather if they do, it is because they necessarily call for Mr. Meagher to reveal information about his use of confidential sources to research and write his articles. That is the only information material to the Arizona case, and it is protected..." *Id*. at 2-3.

As counsel for Mr. Meagher predicted at oral argument, the written discovery propounded by Plaintiffs is futile because Plaintiffs have merely repeated or rephrased the same questions that the Court has already rejected in its April 7 Order. In this letter, Plaintiffs summarize the topics covered by the written questions as "general editorial practices concerning

The Honorable Laurel Beeler
April 26, 2017
Page 4

the use of opinions …, who writes headlines…, [The Deal's] use of fact checkers…, and the need for more than a singular source to support allegations in stories [The Deal] publishes…." *Supra*, 2. In other words, Plaintiffs' written questions parrot the same subjects that the Court has already deemed to be off-limits "for the reasons that Mr. Meagher advance[d]" in his motion to quash the Subpoena. April 7 Order, 3. The same legal analysis thus supports each of Mr. Meagher's objections to the written questions. *See* Exhibit 1 (setting forth objections and legal precedent). At bottom, Mr. Meagher's objections to Plaintiffs' written questions must be sustained to avoid an absurd result that allows Plaintiffs to work around the Order quashing their Subpoena *ad testificandum* merely by posing the same improper questions in writing.

The arguments Plaintiffs' make in support of their written questions are unavailing. Plaintiffs take the position that they can ask Mr. Meagher about his sources as long as their questions are couched in terms of "general editorial practices," rather than directly inquiring about the articles at issue. This tactic should be seen for what it is: a desperate attempt to circumvent the reporters' privilege. When given an opportunity to explain why Mr. Meagher's testimony about general editorial practices is relevant to the Arizona lawsuit against FINRA, Plaintiffs fall back on their position that this information "may demonstrate that it is more likely than not that someone besides an employee of Plaintiffs provided defamatory information to Mr. Meagher." *Supra*, 2.[2] But by insisting that written discovery is necessary for the sole purpose of showing that FINRA was Mr. Meagher's source, Plaintiffs concede that their written questions are impermissibly "targeted only at privileged information" relating to Mr. Meagher's confidential source(s). April 7 Order, 3.

Plaintiffs' questions on the subject of general policies for using opinion or rhetorical hyperbole are also geared towards coaxing Mr. Meagher into revealing information about the source(s) that provided the statements at issue in the Arizona lawsuit. In any event, Mr. Meagher's testimony on this issue is irrelevant because the determination of whether a given statement implies an actionable assertion of fact is a question of law for the court to decide based on its own interpretation, not a question of fact to be determined on the basis of third party testimony. *See, e.g.*, Exhibit 1, Response to Question 8.

Plaintiffs are incorrect to argue that the information that they seek falls "outside the protections of the Shield Law." *Supra*, 2-3. Contrary to Plaintiffs' assertion, a journalist's testimony on whether he intended certain statements to be opinion or about how specific articles were fact checked clearly constitutes "unpublished information" protected by the Shield Law. *See* Cal. Evid. Code § 1070(c) ("'[U]npublished information includes information not disseminated to the public by the person from whom disclosure is sought and includes … data of whatever sort not itself disseminated to the public."). Even assuming generic questions about editorial practices may sometimes fall outside the protection of the Shield Law, the written questions Plaintiffs ask about general editorial policies in this case are either irrelevant to the Arizona lawsuit or target privileged information concerning Mr. Meagher's sources. Either way,

---

[2] During the parties' meet and confer, Plaintiffs' counsel was asked what benefit could be gained from Mr. Meagher's testimony. Plaintiffs' counsel responded that the testimony might show that it was more likely than not that FINRA was one of Mr. Meagher's sources and offered no other explanation.

{00079927;2}

The Honorable Laurel Beeler
April 26, 2017
Page 5

this information is "protected" against compelled disclosure, as the Court recognized in its well-reasoned decision quashing Plaintiffs' Subpoena. *See* April 7 Order, 3.

There is also nothing in the April 7 Order or Mr. Meagher's submissions supporting his motion to quash that gives Plaintiffs carte blanche to propound questions on the subject of "general editorial practices," despite Plaintiffs apparent contention to the contrary. During the parties' meet and confer call, Plaintiffs stated that the April 7 Order was inconsistent in that it quashed the Subpoena while also permitting Plaintiffs' to seek written discovery. Moreover, Plaintiffs have also taken the position that Mr. Meagher "offered to answer questions about general editorial practices," and is now acting in bad faith by objecting to Plaintiffs' written questions. *Supra*, 3. There is nothing inconsistent, however, about the April 7 Order or Mr. Meagher's objections to the written questions. In reality, the April 7 Order gave Plaintiffs an option to "propound written discovery that is not geared toward privileged information" (April 7 Order, 3), which they have clearly failed to do. Moreover, far from making a commitment to answer impermissible questions, Mr. Meagher simply "offered to explore the possibility of responding to written discovery" (*id.*) and Mr. Meagher's attorney expressly stated that his response to written discovery would be "subject to the protections of the reporters' privilege and any other objections for good cause." Reply Declaration of Elizabeth A. McNamara, *Hurry v. FINRA*, 17-mc-80026-LB, ECF No. 13-1, ¶5 (N.D. Cal. Mar. 21, 2017).

Last, recent developments underscore the fact that these written questions form part of a pattern of harassment against Mr. Meagher. As fully set forth in Mr. Meagher's General Objections, FINRA determined that Plaintiffs had committed "egregious" violations of securities law before Plaintiffs served their written discovery on Mr. Meagher. *See* Exhibit 1, General Objection 1. It is evident that Plaintiffs will not be able to prove that the challenged statements in Mr. Meagher's articles are defamatory now that FINRA has entered formal findings detailing Plaintiffs' longstanding misconduct. Since Plaintiffs' lawsuit against FINRA is sure to fail, harassment remains the sole purpose of Plaintiffs' written questions concerning Mr. Meagher's general editorial practices.[3]

### Mr. Meagher's Proposed Compromise

Mr. Meagher is unable to propose a compromise because the written questions propounded by Plaintiffs violate the statutory and constitutional rights previously recognized in this Court's April 7 Order. Accordingly, Mr. Meagher stands behind each of his objections.

|  |  |
|---|---|
| *[signature]* | *Thomas R. Burke (SMB)* |
| CHARLES J. HARDER | THOMAS R. BURKE |
| **HARDER MIRELL & ABRAMS LLP** | **DAVIS WRIGHT TREMAINE LLP** |

---

[3] By serving their written discovery in the form of a written deposition questions – rather than questions to be answered with a written declaration – Plaintiffs have further demonstrated that their goal is to subject Mr. Meagher to a deposition at all costs. The only conceivable purpose of insisting on a deposition is harassment and the hope that Mr. Meagher can be coaxed into waiving his privilege.