THOMAS R. BURKE (CA State Bar No. 141930)
thomasburke@dwt.com
DAVIS WRIGHT TREMAINE LLP
505 Montgomery Street, Suite 800
San Francisco, California  94111
Telephone:      (415) 276-6500
Facsimile:      (415) 276-6599

ELIZABETH A. MCNAMARA (*pro hac vice*)
lizmcnamara@dwt.com
JOHN M. BROWNING (*pro hac vice*)
johnbrowning@dwt.com
DAVIS WRIGHT TREMAINE LLP
1251 Avenue of the Americas, 21st Floor
New York, New York 10020
Telephone:      (212) 489-8230
Facsimile:      (212) 489-8340

Attorneys for Non-Party Journalist
William Meagher

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| John J. Hurry and Justine Hurry, as husband and wife, Investment Services Corporation, an Arizona Corporation,<br><br>     Plaintiffs,<br><br>  v.<br><br>Financial Industry Regulatory Authority, Inc., a Delaware corporation,<br><br>     Defendant. | Case No. 14-cv-02490-PHX-ROS<br><br>N.D. Cal. Case No. 17-mc-80026-LB<br><br>**RESPONSES/OBJECTIONS TO DEPOSITION BY WRITTEN QUESTIONS OF WILLIAM MEAGHER** |

PLEASE TAKE NOTICE that Non-Party Journalist William Meagher, by his attorneys Davis Wright Tremaine LLP, hereby responds and objects to the Deposition by Written Questions submitted by plaintiffs in the above-captioned action (the "Plaintiffs").

## GENERAL OBJECTIONS

These general objections are applicable to each specific Question and are incorporated by this reference into each answer, response, and objection thereto.

1.     Mr. Meagher objects to these Questions as being the latest step in a vindictive campaign of harassment against Mr. Meagher and his employer, The Deal, LLC ("The Deal").  The pattern of harassment is fully set forth in the declaration of John M. Browning dated February 28, 2017 that accompanied Mr. Meagher's successful motion to quash the subpoena served on him by Plaintiffs.  After Plaintiffs' subpoena was quashed – but before Plaintiffs propounded these Written Questions – FINRA issued an Extended Hearing Panel Decision ruling that Mr. Hurry and Scottsdale Capital Advisors Corporation ("Scottsdale") had committed "egregious" violations of securities law by unlawfully selling unregistered stock after turning a blind eye to multiple "red flags."  *See*, *Department of Enforcement v. Scottsdale Capital Advisors Corporation*, Disciplinary Proceeding No. 2014041724601, at 102 (FINRA Mar. 31, 2017).  For their role in the illegal trading scheme, Scottsdale was fined $1.5 million and John Hurry was given a lifetime ban "from associating with any FINRA member in any capacity."  *Id*. at 107-08.  In light of his conduct, Mr. Hurry was found to be "a threat to investors and the integrity of the markets" and the FINRA panel found that "he repeatedly testified falsely."  *Id*. at 107.  Given FINRA's detailed findings of a longstanding pattern of misconduct by Scottsdale and Mr. Hurry, it is evident that Plaintiffs will not be able to prove that the statements allegedly leaked by FINRA to Mr. Meagher were defamatory. Since Plaintiffs lawsuit against FINRA is sure to fail, these written deposition questions must be seen for what they are: an exercise in vindictive harassment against Mr. Meagher for reporting on Plaintiffs' now proven misdeeds.

2.     Mr. Meagher objects to Plaintiffs' attempt to conduct a deposition by written questions pursuant to Federal Rules of Civil Procedure 31.  After quashing Plaintiffs' subpoena *ad testificandum*, Judge Beeler gave Plaintiffs the opportunity to submit "written discovery" to Mr.

Meagher, subject to Mr. Meagher's objections.  Order Quashing Subpoena, *Hurry*, 17-mc-80026, Dkt. 15 at 3 (the "Order").  It defeats the purpose of the Court's Order quashing the subpoena to force Mr. Meagher to incur the time and expense of appearing for a deposition at which Mr. Meagher's attorneys will instruct him not to answer the Written Questions because they call for privileged information and are deficient for the various reasons set forth below.

3.     Mr. Meagher objects to the Questions to the extent that they seek to impose obligations beyond the scope permitted by the Federal Rules of Civil Procedure and applicable Local Rules of the Northern District of California.

4.     Mr. Meagher objects to the Questions to the extent that they seek information protected from disclosure by privileges and other protections from production including, without limitation, constitutional or statutory reporter's privileges and/or shield laws, the attorney-client privilege, the work-product doctrine, joint-defense or common-interest privilege, and/or any other constitutional, statutory, common law or regulatory protection, immunity or proscription from disclosure.

5.     Mr. Meagher objects to the Questions to the extent they seek confidential or proprietary business information, trade secrets, commercially sensitive information, or confidential personal information not relevant to this lawsuit, including that of third parties.

6.     Mr. Meagher objects to the Questions to the extent they seek information or documents already within Plaintiff's possession, publicly available or otherwise available to Plaintiff from other source(s) equally convenient, less burdensome, or less expensive.

7.     Mr. Meagher objects to the Questions to the extent that they seek information that is unduly burdensome to obtain.

8.     Mr. Meagher objects to the Questions to the extent that they are overbroad, unreasonably duplicative, oppressive, or harassing.

9.     Mr. Meagher objects to the Questions to the extent that they are vague, ambiguous, or not susceptible to an easily discernible meaning.

10.    Mr. Meagher objects to the definition of "You" and "Your" as overbroad to the extent it purports to encompass individuals or entities over which Mr. Meagher does not have control.

11.    Mr. Meagher objects to the Questions to the extent they fail to describe the information sought with reasonable particularity.

12.    Mr. Meagher objects to the Questions to the extent that they seek information irrelevant to the subject matter of this action and not reasonably calculated to lead to the discovery of admissible evidence.

These responses are based upon the facts and information now known to Mr. Meagher as well as his present analysis of the case, and may not in any way be deemed to be an admission or representation that further facts, documents, or witnesses having knowledge relevant to the subject matter of a Question do not exist.  Mr. Meagher reserves the right to alter, supplement, amend, or otherwise modify these responses in any way at any time.

**RESPONSES AND SPECIFIC OBJECTIONS TO WRITTEN QUESTIONS**

**Question 1:**

Identify yourself fully, including your full name, business address, and occupation including job title and the business(es) where you are employed.

**Response to Question 1:**

William Paul Meagher is employed by The Deal as an Associate Editor.  Mr. Meagher's office is located at 1435 North McDowell Boulevard, Suite 120, in Petaluma, California 95454.

**Question 2:**

Did you write every word of the Articles (as used herein, "Articles" refers to (1) the September 17, 2013 article in The Deal Pipeline entitled "Finra targets offshore firms in pump-and-dump"; (2) the December 6, 2013 article in The Deal Pipeline entitled, "FBI, securities officials investigating Scottsdale Capital, Alpine Securities, source says"; (3) the March 20, 2014 article in The Deal Pipeline entitled, "SEC requests default judgment in $34M Biozoom pump-and-dump case"; and (4) the April 16, 2014 article in The Deal Pipeline entitled, "Finra focusing on money-laundering violations")?

**Response to Question 2:**

Mr. Meagher has already affirmed that he wrote the Articles in his declaration filed in support of his motion to quash and dated February 27, 2017.  *See* Declaration of William Meagher in Support of Notice of Motion and Motion to Quash Subpoena, *Hurry v. Financial Industry Regulatory Authority, Inc.*, 17-mc-80026-LB, Dkt. 3, ¶¶5-7 (N.D. Cal. Feb. 28, 2017) (the "Meagher Declaration").  The extent to which individuals other than Mr. Meagher contributed to the Articles is absolutely privileged as unpublished editorial information.  *See, e.g.*, *Miller v. Superior Court*, 21 Cal. 4th 883, 890 (App. Div. 1999) ("The shield law is *absolute* … in immunizing a newsperson from revealing unpublished information obtained in the newsgathering process"); *Shoen v. Shoen*, 5 F.3d 1289, 1292 (9th Cir. 1993) ("*Shoen I*"); Cal. Evid. Code § 1070(c) ("As used in this section, 'unpublished information' includes information not disseminated to the public by the person from whom disclosure is sought and includes … ***data of whatever sort*** not itself disseminated to the public....") (emphasis added).

Mr. Meagher further objects that this Question is incapable of leading to the discovery relevant information since, as Judge Beeler has ruled, questions about whether Mr. Meagher was responsible for "writing every word of the Article… do not bear on [Plaintiffs'] claims against FINRA."  Order at 2.  Moreover, to the extent this Question is relevant to Plaintiffs' claims against FINRA, any relevance is "because [the Question] necessarily call[s] for Mr. Meagher to reveal information about his use of confidential sources to research and write his articles," which is also privileged information.  *Id.*  Last, Mr. Meagher objects to this Question on the ground that revealing the identity of other individuals who worked on the Article (if any) would result in harassment of yet more journalists working for The Deal given Plaintiffs' track record of prosecuting meritless subpoenas in this Action.  *See, e.g.*, Fed. R. Civ. P. 45(b)(3)(A)(iv) (requiring the Court to "quash … a subpoena … that subjects a person to undue burden").

**Question 3:**

If you did not write every word of the Articles, who did and what part of each Article did they write?

**Response to Question 3:**

The extent to which individuals other than Mr. Meagher contributed to the Articles' is absolutely privileged as unpublished editorial information. *See, e.g.*, *Miller*, 21 Cal. 4th at 890 ("The shield law is absolute … in immunizing a newsperson from revealing unpublished information obtained in the newsgathering process"); *Shoen*, 5 F.3d at 1292; Cal. Evid. Code § 1070(c) ("As used in this section, 'unpublished information' includes information not disseminated to the public by the person from whom disclosure is sought and includes … ***data of whatever sort*** not itself disseminated to the public....") (emphasis added).

Mr. Meagher further objects that this Question is incapable of leading to the discovery of relevant information since, as Judge Beeler has ruled, questions about whether Mr. Meagher was responsible for "writing every word of the Article… do not bear on [Plaintiffs'] claims against FINRA." Order at 2.  Moreover, to the extent this Question is relevant to Plaintiffs' claims against FINRA, it is relevant "because [it] necessarily call[s] for Mr. Meagher to reveal information about his use of confidential sources to research and write his articles," which is also privileged information. *Id*.  Last, Mr. Meagher objects to this Question on the ground that revealing the identity of individuals other than Mr. Meagher who worked on the Articles (if any) would result in further harassment of yet more employees of The Deal by meritless demands for discovery, especially given Plaintiffs' course of conduct thus far. *See, e.g.*, Fed. R. Civ. P. 45(b)(3)(A)(iv) (requiring the Court to "quash … a subpoena … that subjects a person to undue burden").

**Question 4:**

Did you write each of the headlines that accompanied the Articles?

**Response to Question 4:**

The extent to which Mr. Meagher wrote or otherwise contributed to the Articles' headlines is absolutely privileged as unpublished editorial information. *See, e.g.*, *Miller*, 21 Cal. 4th at 890 ("The shield law is absolute … in immunizing a newsperson from revealing unpublished information obtained in the newsgathering process"); *Shoen I*, 5 F.3d at 1292; Cal. Evid. Code § 1070(c) ("As used in this section, 'unpublished information' includes information not disseminated

to the public by the person from whom disclosure is sought and includes … ***data of whatever sort*** not itself disseminated to the public....") (emphasis added).

Mr. Meagher further objects that this Question is incapable of leading to the discovery of relevant information since, as Judge Beeler has ruled, topics other than the identity of Mr. Meagher's confidential source(s) "do not bear on [Plaintiffs'] claims against FINRA" and are thus "of limited relevance to the Arizona lawsuit." Order at 2, 3. Moreover, to the extent this Question is relevant to Plaintiffs' claims against FINRA, it is "because [it] necessarily call[s] for Mr. Meagher to reveal information about his use of confidential sources to research and write his articles," which is also privileged information. *Id.*

**Question 5:**

If you did not write each headline that accompanied the Articles, who did?

**Response to Question 5:**

The extent to which individuals other than Mr. Meagher wrote or otherwise contributed to the Articles' headlines is absolutely privileged as unpublished editorial information. *See, e.g.*, *Miller*, 21 Cal. 4th at 890 ("The shield law is *absolute* … in immunizing a newsperson from revealing unpublished information obtained in the newsgathering process"); *Shoen I*, 5 F.3d at 1292; Cal. Evid. Code § 1070(c) ("As used in this section, 'unpublished information' includes information not disseminated to the public by the person from whom disclosure is sought and includes … ***data of whatever sort*** not itself disseminated to the public....") (emphasis added).

Mr. Meagher further objects that this Question is incapable of leading to the discovery of relevant information since, as Judge Beeler has ruled, topics other than the identity of Mr. Meagher's confidential source(s) "do not bear on [Plaintiffs'] claims against FINRA" and are thus "of limited relevance to the Arizona lawsuit." Order at 2, 3. Moreover, to the extent this Question is relevant to Plaintiffs' claims against FINRA, it is "because [it] necessarily call[s] for Mr. Meagher to reveal information about his use of confidential sources to research and write his articles," which is also privileged information. *Id.* at 2. Last, Mr. Meagher objects to this Question on the ground that revealing the identity of other individuals who worked on the Articles (if any) would result in harassment of yet more journalists working for The Deal, especially given

Plaintiffs' track record of prosecuting meritless subpoenas in this Action.  *See, e.g.*, Fed. R. Civ. P. 45(b)(3)(A)(iv) (requiring the Court to "quash … a subpoena … that subjects a person to undue burden").

**Question 6:**

Do you contend that every statement in the Articles is true?

**Response to Question 6**

With regard to the information Mr. Meagher received from confidential source(s) regarding Plaintiffs, Mr. Meagher has already affirmed that he "believed that information to be true when [he] first published it and believe[s] it to be true now."  Meagher Decl. ¶5.   Mr. Meagher's contention as to the truth of other statements published in the Articles is absolutely privileged unpublished editorial information.  *See, e.g.*, *Miller*, 21 Cal. 4th at 890 ("The shield law is *absolute* … in immunizing a newsperson from revealing unpublished information obtained in the newsgathering process"); *Shoen*, 5 F.3d at 1292; Cal. Evid. Code § 1070(c) ("As used in this section, 'unpublished information' includes information not disseminated to the public by the person from whom disclosure is sought and includes … ***data of whatever sort*** not itself disseminated to the public....") (emphasis added).

Mr. Meagher further objects that this Question is incapable of leading to the discovery of relevant information since, as Judge Beeler has ruled, topics other than the identity of Mr. Meagher's confidential source(s) "do not bear on [Plaintiffs'] claims against FINRA" and are thus "of limited relevance to the Arizona lawsuit."  Order at 2, 3.  Moreover, to the extent this Question is relevant to Plaintiffs' claims against FINRA, it is "because [it] necessarily call[s] for Mr. Meagher to reveal information about his use of confidential sources to research and write his articles," which is also privileged information.  *Id*. at 2.

**Question 7:**

What, if anything, in the Articles is your opinion?

**Response to Question 7:**

Mr. Meagher's testimony as to whether statements in the Articles constitute opinion is irrelevant since the determination of whether a challenged statement constitutes non-actionable

opinion "is a question of law to be decided by the court." *Troy Grp. V. Tilson*, 364 F. Supp. 2d 1149, 1158 (C.D. Cal. 2005) (*quoting Baker v. Los Angeles Herald Examiner*, 42 Cal. 3d 254, 260 (1986)). In addition, Mr. Meagher's testimony as to whether some or all of the Articles constitute opinion is absolutely privileged as unpublished editorial information. *See, e.g.*, *Miller*, 21 Cal. 4th at 890 ("The shield law is *absolute* … in immunizing a newsperson from revealing unpublished information obtained in the newsgathering process"); *Shoen*, 5 F.3d at 1292; Cal. Evid. Code § 1070(c) ("As used in this section, 'unpublished information' includes information not disseminated to the public by the person from whom disclosure is sought and includes … ***data of whatever sort*** not itself disseminated to the public....") (emphasis added).

Mr. Meagher further objects that this Question is incapable of leading to the discovery of relevant information because, as Judge Beeler has ruled, topics other than the identity of Mr. Meagher's confidential source(s) "do not bear on [Plaintiffs'] claims against FINRA" and are thus "of limited relevance to the Arizona lawsuit." Order at 2, 3. Moreover, to the extent this Question is relevant to Plaintiffs' claims against FINRA, it is "because [it] necessarily call[s] for Mr. Meagher to reveal information about his use of confidential sources to research and write his articles," which is also privileged information. *Id*. at 2. Finally, Mr. Meagher further objects to this Question because it is overly broad and burdensome in that it does not identify what statements from four different Articles the Question is focused on or even if such statements have any bearing on Plaintiffs' lawsuit against FINRA.

**Question 8:**

What, if anything, in the Articles is rhetorical hyperbole?

**Response to Question 8:**

Mr. Meagher's testimony as to whether statements in the Articles constitute rhetorical hyperbole is irrelevant since the determination of whether a challenged statement "implies an assertion of objective fact is a question of law." *Steam Press Holdings, Inc. v. Haw. Teamsters & Allied Workers Union, Local 996*, 302 F.3d 998, 1005 (9th Cir. 2002). In addition, Mr. Meagher's testimony as to whether some or all of the Articles constitute rhetorical hyperbole is absolutely privileged as unpublished editorial information. *See, e.g.*, *Miller*, 21 Cal. 4th at 890 ("The shield

law is *absolute* … in immunizing a newsperson from revealing unpublished information obtained in the newsgathering process"); *Shoen*, 5 F.3d at 1292; Cal. Evid. Code § 1070(c) ("As used in this section, 'unpublished information' includes information not disseminated to the public by the person from whom disclosure is sought and includes … ***data of whatever sort*** not itself disseminated to the public....") (emphasis added).

Mr. Meagher further objects that this Question is incapable of leading to the discovery of relevant information because, as Judge Beeler has ruled, topics other than the identity of Mr. Meagher's confidential source(s) "do not bear on [Plaintiffs'] claims against FINRA" and are thus "of limited relevance to the Arizona lawsuit." Order at 2, 3. Moreover, to the extent this Question is relevant to Plaintiffs' claims against FINRA, it is "because [it] necessarily call[s] for Mr. Meagher to reveal information about his use of confidential sources to research and write his articles," which is also privileged information. *Id*. at 2. Finally, Mr. Meagher further objects to this Question because it is overly broad and burdensome in that it does not identify what statements from the four different Articles the Question is focused on or even if such statements have any bearing on the Plaintiffs' lawsuit against FINRA.

**Question 9:**

What, if anything, in the Articles is conjecture?

**Response to Question 9:**

Mr. Meagher's testimony as to whether statements in the Articles constitute conjecture is irrelevant since the determination of whether a challenged statement "implies an assertion of objective fact is a question of law." *Steam Press Holdings*, 302 F.3d at 1005. In addition, Mr. Meagher's testimony as to whether some or all of the Articles constitute conjecture is absolutely privileged as unpublished editorial information. *See, e.g.*, *Miller*, 21 Cal. 4th at 890 ("The shield law is *absolute* … in immunizing a newsperson from revealing unpublished information obtained in the newsgathering process"); *Shoen*, 5 F.3d at 1292; Cal. Evid. Code § 1070(c) ("As used in this section, 'unpublished information' includes information not disseminated to the public by the person from whom disclosure is sought and includes … ***data of whatever sort*** not itself disseminated to the public....") (emphasis added).

1    Mr. Meagher further objects that this Question is incapable of leading to the discovery of

2    relevant information because, as Judge Beeler has ruled, topics other than the identity of Mr.

3    Meagher's confidential source(s) "do not bear on [Plaintiffs'] claims against FINRA" and are thus

4    "of limited relevance to the Arizona lawsuit." Order at 2, 3. Moreover, to the extent this Question

5    is relevant to Plaintiffs' claims against FINRA, it is "because [it] necessarily call[s] for Mr.

6    Meagher to reveal information about his use of confidential sources to research and write his

7    articles," which is also privileged information. Id. at 2. Last, Mr. Meagher objects to the Question

8    as vague and confusing since the meaning of the word "conjecture" is not clear.

9    **Question 10:**

10    What, if anything, in the Articles is not a statement of fact?

11    **Response to Question 10:**

12    Mr. Meagher's testimony as to whether any statements in the Articles are not statements of

13    fact is irrelevant since the determination of whether a challenged statement "implies an assertion of

14    objective fact is a question of law." *Steam Press Holdings*, 302 F.3d at 1005. In addition, Mr.

15    Meagher's testimony as to whether some or all of the Articles constitute statements of fact is

16    absolutely privileged as unpublished editorial information. *See, e.g.*, *Miller*, 21 Cal. 4th at 890

17    ("The shield law is *absolute* … in immunizing a newsperson from revealing unpublished

18    information obtained in the newsgathering process"); *Shoen I*, 5 F.3d at 1292; Cal. Evid. Code §

19    1070(c) ("As used in this section, 'unpublished information' includes information not disseminated

20    to the public by the person from whom disclosure is sought and includes … ***data of whatever sort***

21    not itself disseminated to the public....") (emphasis added).

22    Mr. Meagher further objects that this Question is incapable of leading to the discovery of

23    relevant information because, as Judge Beeler has ruled, topics other than the identity of Mr.

24    Meagher's confidential source(s) "do not bear on [Plaintiffs'] claims against FINRA" and are thus

25    "of limited relevance to the Arizona lawsuit." Order at 2, 3. Moreover, to the extent this Question

26    is relevant to Plaintiffs' claims against FINRA, it is "because [it] necessarily call[s] for Mr.

27    Meagher to reveal information about his use of confidential sources to research and write his

28

articles," which is also privileged information.  *Id.* at 2.  Last, Mr. Meagher objects that this Question is duplicative of Questions 7-9, *inter alia*.

**Question 11:**

What are The Deal Pipeline's general editorial practices, if any, for including opinions in its news articles?

**Response to Question 11:**

A Question concerning The Deal's general practices concerning publishing opinion assumes without foundation that The Deal has "general editorial practices" that govern opinion and, if such general practices did exist, Mr. Meagher's testimony concerning any such practices are irrelevant to Plaintiffs' claims against FINRA since the determination of whether a challenged statement constitutes non-actionable opinion "is a question of law to be decided by the court."  *Troy Grp.*, 364 F. Supp. 2d at 1158.  Mr. Meagher further objects that this Question is incapable of leading to the discovery of relevant information because, as Judge Beeler has ruled, topics other than the identity of Mr. Meagher's confidential source(s) "do not bear on [Plaintiffs'] claims against FINRA" and are thus "of limited relevance to the Arizona lawsuit."  Order at 2, 3.  Simply put, The Deal's general editorial practices with regard to the publication of opinion are not relevant to Plaintiffs' claims against FINRA.  Moreover, to the extent this Question is relevant to Plaintiffs' claims against FINRA, it is "because [it] necessarily call[s] for Mr. Meagher to reveal information about his use of confidential sources to research and write his articles," which is also privileged information.  *Id.* at 2.

Mr. Meagher's testimony as to the practice of The Deal's editors in including opinion in news articles is also absolutely privileged as unpublished editorial information.  *See, e.g.*, *Miller*, 21 Cal. 4th at 890 ("The shield law is *absolute* … in immunizing a newsperson from revealing unpublished information obtained in the newsgathering process"); *Shoen I*, 5 F.3d at 1292; Cal. Evid. Code § 1070(c) ("As used in this section, 'unpublished information' includes information not disseminated to the public by the person from whom disclosure is sought and includes … ***data of whatever sort*** not itself disseminated to the public....") (emphasis added).  Mr. Meagher further objects to this Question as being duplicative of Question 7, *inter alia*, and as being an effort to

circumvent the protections of the reporters' privilege by reframing a specific question about the Articles as a question about general editorial practice.

**Question 12:**

What are The Deal Pipeline's general editorial practices, if any, for including rhetorical hyperbole in its news articles?

**Response to Question 12:**

A Question concerning The Deal's general practices for publishing rhetorical hyperbole assumes without foundation that The Deal has "general editorial practices" that govern publishing rhetorical hyperbole and, if such practices exist, Mr. Meagher's testimony concerning such a practices is irrelevant to Plaintiffs' claims against FINRA since the determination of whether a challenged statement "implies an assertion of objective fact is a question of law." *Steam Press Holdings*, 302 F.3d at 1005.  Mr. Meagher further objects that this Question is incapable of leading to the discovery of relevant information because, as Judge Beeler has ruled, topics other than the identity of Mr. Meagher's confidential source(s) "do not bear on [Plaintiffs'] claims against FINRA" and are thus "of limited relevance to the Arizona lawsuit."  Order at 2, 3.  Simply put, The Deal's general editorial practices are not relevant to Plaintiffs' claims against FINRA.  Moreover, to the extent this Question is relevant to Plaintiffs' claims against FINRA, it is "because [it] necessarily call[s] for Mr. Meagher to reveal information about his use of confidential sources to research and write his articles," which is also privileged information.  *Id*. at 2.

Mr. Meagher's testimony as to the practice of The Deal's editors in including rhetorical hyperbole in news articles is also absolutely privileged as unpublished editorial information.  *See, e.g.*, *Miller*, 21 Cal. 4th at 890 ("The shield law is *absolute* … in immunizing a newsperson from revealing unpublished information obtained in the newsgathering process"); *Shoen I*, 5 F.3d at 1292; Cal. Evid. Code § 1070(c) ("As used in this section, 'unpublished information' includes information not disseminated to the public by the person from whom disclosure is sought and includes … ***data of whatever sort*** not itself disseminated to the public....") (emphasis added).  Mr. Meagher further objects to this Question as being duplicative of Question 8, *inter alia*, and as being

an effort to circumvent the protections of the reporters' privilege by reframing a specific question about the Articles as a question about general editorial practice.

**Question 13:**

What are The Deal Pipeline's general editorial practices, if any, for including conjecture in its news articles?

**Response to Question 13:**

A Question concerning The Deal's general practices for publishing conjecture assumes without foundation that The Deal has "general editorial practices" that govern publishing conjecture and, if such practices exist, Mr. Meagher's testimony as to The Deal's general practices of publishing conjecture is irrelevant to Plaintiffs' claims against FINRA since the determination of whether a challenged statement "implies an assertion of objective fact is a question of law." *Steam Press Holdings*, 302 F.3d at 1005. Mr. Meagher further objects that this Question is incapable of leading to the discovery of relevant information because, as Judge Beeler has ruled, topics other than the identity of Mr. Meagher's confidential source(s) "do not bear on [Plaintiffs'] claims against FINRA" and are thus "of limited relevance to the Arizona lawsuit." Order at 2, 3. Simply put, The Deal's general editorial practices are not relevant to Plaintiffs' claims against FINRA. Moreover, to the extent this Question is relevant to Plaintiffs' claims against FINRA, it is "because [it] necessarily call[s] for Mr. Meagher to reveal information about his use of confidential sources to research and write his articles," which is also privileged information. *Id*. at 2.

Mr. Meagher's testimony as to the practice of The Deal's editors in including conjecture in news articles is also absolutely privileged as unpublished editorial information. *See, e.g.*, *Miller*, 21 Cal. 4th at 890 ("The shield law is *absolute* … in immunizing a newsperson from revealing unpublished information obtained in the newsgathering process"); *Shoen I*, 5 F.3d at 1292; Cal. Evid. Code § 1070(c) ("As used in this section, 'unpublished information' includes information not disseminated to the public by the person from whom disclosure is sought and includes … ***data of whatever sort*** not itself disseminated to the public....") (emphasis added). Mr. Meagher further objects to this Question as being duplicative of Question 9, *inter alia*, and as being an effort to circumvent the protections of the reporters' privilege by reframing a specific question about the

1  Articles as a question about general editorial practice.  Last, Mr. Meagher objects to the Question as

2  vague since the meaning of the word "conjecture" is not clear.

3  **Question 14:**

4      Who generally writes the headlines that accompany articles you write for The Deal

5  Pipeline?

6  **Response to Question 14:**

7      Mr. Meagher objects that this Question is incapable of leading to the discovery of relevant

8  information since, as Judge Beeler has ruled, topics other than the identity of Mr. Meagher's

9  confidential source(s) "do not bear on [Plaintiffs'] claims against FINRA" and are thus "of limited

10  relevance to the Arizona lawsuit."  Order at 2, 3.  Moreover, to the extent this Question is relevant

11  to Plaintiffs' claims against FINRA, it is "because [it] necessarily call[s] for Mr. Meagher to reveal

12  information about his use of confidential sources to research and write his articles," which is also

13  privileged information.  *Id.* at 2.  Mr. Meagher further objects to this Question on the ground that

14  revealing the identity of other individuals who worked on the Articles (if any) would result in

15  harassment of yet more journalists working for The Deal, especially given Plaintiffs' track record

16  of prosecuting meritless subpoenas in this Action.  *See, e.g.*, Fed. R. Civ. P. 45(b)(3)(A)(iv)

17  (requiring the Court to "quash … a subpoena … that subjects a person to undue burden").

18      The identity of the individuals that have written headlines for Mr. Meagher's articles is

19  absolutely privileged as unpublished editorial information.  *See, e.g.*, *Miller*, 21 Cal. 4th at 890

20  ("The shield law is *absolute* … in immunizing a newsperson from revealing unpublished

21  information obtained in the newsgathering process"); *Shoen I*, 5 F.3d at 1292; Cal. Evid. Code §

22  1070(c) ("As used in this section, 'unpublished information' includes information not disseminated

23  to the public by the person from whom disclosure is sought and includes … ***data of whatever sort***

24  not itself disseminated to the public....") (emphasis added).  Mr. Meagher further objects to this

25  Question as being duplicative of Questions 4-5, *inter alia*, and as being an effort to circumvent the

26  protections of the reporters' privilege by reframing a specific question about the Articles as a

27  question about general editorial practice.

28

---

RESPONSES/OBJECTIONS TO DEPOSITION BY WRITTEN QUESTIONS OF WILLIAM MEAGHER
Case No. 14-cv-02490-PHX-ROS
NG-S40TG52V 4831-8303-6999v.1 0090219-000012

**Question 15:**

What are The Deal Pipeline's general editorial practices, if any, for verifying information in the stories it publishes?

**Response to Question 15:**

Mr. Meagher objects that this Question is incapable of leading to the discovery of relevant information because, as Judge Beeler has ruled, "policies about fact-checking and verifying sources … do not bear on [Plaintiffs'] claims against FINRA." Order at 2. Simply put, The Deal's general editorial practices are not relevant to Plaintiffs' claims against FINRA. Moreover, to the extent this Question is relevant to Plaintiffs' claims against FINRA, it is "because [it] necessarily call[s] for Mr. Meagher to reveal information about his use of confidential sources to research and write his articles," which is absolutely privileged information. *Id*. at 2.

Mr. Meagher's testimony as to The Deal's practices for fact-checking its news articles is also absolutely privileged as unpublished editorial information. *See, e.g.*, *Miller*, 21 Cal. 4th at 890 ("The shield law is *absolute* … in immunizing a newsperson from revealing unpublished information obtained in the newsgathering process"); *Shoen I*, 5 F.3d at 1292; Cal. Evid. Code § 1070(c) ("As used in this section, 'unpublished information' includes information not disseminated to the public by the person from whom disclosure is sought and includes … ***data of whatever sort*** not itself disseminated to the public....") (emphasis added). Mr. Meagher further objects to this Question as being an effort to circumvent the protections of the reporters' privilege by reframing a specific question about the fact-checking process for the Articles as a question about general editorial practice.

**Question 16:**

Does The Deal Pipeline employ fact checkers to verify information in the stories it publishes?

**Response to Question 16**

Mr. Meagher objects that this Question is incapable of leading to the discovery of relevant information because, as Judge Beeler has ruled, "policies about fact-checking and verifying sources … do not bear on [Plaintiffs'] claims against FINRA." Order at 2. Simply put, The Deal's general

editorial practices are not relevant to Plaintiffs' claims against FINRA.  Moreover, to the extent this Question is relevant to Plaintiffs' claims against FINRA, it is "because [it] necessarily call[s] for Mr. Meagher to reveal information about his use of confidential sources to research and write his articles," which is absolutely privileged information.  *Id.* at 2.

Mr. Meagher's testimony as to The Deal's practices for fact-checking its news articles is also absolutely privileged as unpublished editorial information.  *See, e.g.*, *Miller*, 21 Cal. 4th at 890 ("The shield law is *absolute* … in immunizing a newsperson from revealing unpublished information obtained in the newsgathering process"); *Shoen I*, 5 F.3d at 1292; Cal. Evid. Code § 1070(c) ("As used in this section, 'unpublished information' includes information not disseminated to the public by the person from whom disclosure is sought and includes … ***data of whatever sort*** not itself disseminated to the public....") (emphasis added).  Mr. Meagher further objects to this Question as being duplicative of Questions 15 & 17, *inter alia*, and as being an effort to circumvent the protections of the reporters' privilege by reframing a specific question about the fact-checking process for the Articles as a question about general editorial practice.

**Question 17:**

Did The Deal Pipeline employ fact checkers to verify any information contained in the Articles?

**Response to Question 17:**

Mr. Meagher objects that this Question is incapable of leading to the discovery of relevant information because, as Judge Beeler has ruled, "fact-checking … do[es] not bear on [Plaintiffs'] claims against FINRA."  Order at 2.  Moreover, to the extent this Question is relevant to Plaintiffs' claims against FINRA, it is "because [it] necessarily call[s] for Mr. Meagher to reveal information about his use of confidential sources to research and write his articles," which is absolutely privileged information.  *Id.* at 2.

Mr. Meagher's testimony as to The Deal's practices for fact-checking its news articles is also absolutely privileged as unpublished editorial information.  *See, e.g.*, *Miller*, 21 Cal. 4th at 890 ("The shield law is *absolute* … in immunizing a newsperson from revealing unpublished information obtained in the newsgathering process"); *Shoen I*, 5 F.3d at 1292; Cal. Evid. Code §

1070(c) ("As used in this section, 'unpublished information' includes information not disseminated to the public by the person from whom disclosure is sought and includes … ***data of whatever sort*** not itself disseminated to the public....") (emphasis added).

**Question 18:**

If The Deal Pipeline employed fact checkers to verify information contained in the Articles, who were the fact checkers, what facts did they check, and what steps did they take to check those facts?

**Response to Question 18:**

Mr. Meagher objects that this Question is incapable of leading to the discovery of relevant information because, as Judge Beeler has ruled, "fact-checking … do[es] not bear on [Plaintiffs'] claims against FINRA." Order at 2. Moreover, to the extent this Question is relevant to Plaintiffs' claims against FINRA, it is "because [it] necessarily call[s] for Mr. Meagher to reveal information about his use of confidential sources to research and write his articles," which is absolutely privileged information. *Id.* at 2.

Mr. Meagher's testimony as to the process for fact-checking the Articles is also absolutely privileged as unpublished editorial information. *See, e.g.*, *Miller*, 21 Cal. 4th at 890 ("The shield law is *absolute* … in immunizing a newsperson from revealing unpublished information obtained in the newsgathering process"); *Shoen I*, 5 F.3d at 1292; Cal. Evid. Code § 1070(c) ("As used in this section, 'unpublished information' includes information not disseminated to the public by the person from whom disclosure is sought and includes … ***data of whatever sort*** not itself disseminated to the public....") (emphasis added). Mr. Meagher further objects to this Question on the ground that revealing the identity of other individuals who worked on the Articles (if any) would result in harassment of yet more journalists working for The Deal, especially given Plaintiffs' track record of prosecuting meritless subpoenas in this Action. *See, e.g.*, Fed. R. Civ. P. 45(b)(3)(A)(iv) (requiring the Court to "quash … a subpoena … that subjects a person to undue burden"). Last, Mr. Meagher objects to form on the basis that this Question is an impermissible compound question.

**Question 19:**

What are The Deal Pipeline's general editorial practices, if any, concerning the need for more than a singular source to support any allegations in the stories it publishes?

**Response to Question 19:**

To the extent this Question is relevant to Plaintiffs' claims against FINRA, it is "because [it] necessarily call[s] for Mr. Meagher to reveal information about his use of confidential sources to research and write his articles," which is absolutely privileged information. *Id*. at 2. Mr. Meagher further objects that this Question is incapable of leading to the discovery of relevant information because, as Judge Beeler has ruled, "policies about fact-checking and verifying sources … do not bear on [Plaintiffs'] claims against FINRA." Order at 2. Simply put, The Deal's general editorial practices are not relevant to Plaintiffs' claims against FINRA.

Mr. Meagher's testimony as to The Deal's general editorial practices for requiring a certain number of sources to substantiate its articles is also absolutely privileged as unpublished editorial information. *See, e.g.*, *Miller*, 21 Cal. 4th at 890 ("The shield law is *absolute* … in immunizing a newsperson from revealing unpublished information obtained in the newsgathering process"); *Shoen I*, 5 F.3d at 1292; Cal. Evid. Code § 1070(c) ("As used in this section, 'unpublished information' includes information not disseminated to the public by the person from whom disclosure is sought and includes … ***data of whatever sort*** not itself disseminated to the public....") (emphasis added). Mr. Meagher further objects to this Question as being an effort to circumvent the protections of the reporters' privilege by reframing a specific question about the number of confidential source(s) for the Articles as a question about general editorial practice.

**Question 20:**

Do you generally include your opinions in articles you write for The Deal Pipeline?

**Response to Question 20:**

Mr. Meagher objects to this Question since his testimony as to his own general practice of publishing opinion, if such a practice exists, is irrelevant to Plaintiffs' claims against FINRA since the determination of whether a challenged statement constitutes non-actionable opinion "is a question of law to be decided by the court." *Troy Grp.*, 364 F. Supp. 2d at 1158. Mr. Meagher

further objects that this Question is incapable of leading to the discovery of relevant information because, as Judge Beeler has ruled, topics other than the identity of Mr. Meagher's confidential source(s) "do not bear on [Plaintiffs'] claims against FINRA" and are thus "of limited relevance to the Arizona lawsuit."  Order at 2, 3.  Simply put, Mr. Meagher's journalistic practices with regard to the publication of opinion are not relevant to Plaintiffs' claims against FINRA.  Moreover, to the extent this Question is relevant to Plaintiffs' claims against FINRA, it is "because [it] necessarily call[s] for Mr. Meagher to reveal information about his use of confidential sources to research and write his articles," which is also privileged information.  *Id.* at 2.

Mr. Meagher's testimony as to his own practice of including opinion in news articles is also absolutely privileged as unpublished editorial information.  *See, e.g.*, *Miller*, 21 Cal. 4th at 890 ("The shield law is *absolute* … in immunizing a newsperson from revealing unpublished information obtained in the newsgathering process"); *Shoen I*, 5 F.3d at 1292; Cal. Evid. Code § 1070(c) ("As used in this section, 'unpublished information' includes information not disseminated to the public by the person from whom disclosure is sought and includes … ***data of whatever sort*** not itself disseminated to the public....") (emphasis added).  Mr. Meagher further objects to this Question as being duplicative of Question 7, *inter alia*, and as being an effort to circumvent the protections of the reporters' privilege by reframing a specific question about the Articles as a question about general editorial practice.

**Question 21:**

Do you generally include rhetorical hyperbole in articles you write for The Deal Pipeline?

**Response to Question 21:**

Mr. Meagher objects to this Question since his testimony as to his own general practice of publishing rhetorical hyperbole, if such a practice exists, is irrelevant to Plaintiffs' claims against FINRA since the determination of whether a challenged statement "implies an assertion of objective fact is a question of law."  *Steam Press Holdings*, 302 F.3d at 1005.  Mr. Meagher further objects that this Question is incapable of leading to the discovery of relevant information because, as Judge Beeler has ruled, topics other than the identity of Mr. Meagher's confidential source(s) "do not bear on [Plaintiffs'] claims against FINRA" and are thus "of limited relevance to the

Arizona lawsuit." Order at 2, 3. Simply put, Mr. Meagher's general journalistic practices are not relevant to Plaintiffs' claims against FINRA. Moreover, to the extent this Question is relevant to Plaintiffs' claims against FINRA, it is "because [it] necessarily call[s] for Mr. Meagher to reveal information about his use of confidential sources to research and write his articles," which is also privileged information. *Id*. at 2.

Mr. Meagher's testimony as to his own practice of including rhetorical hyperbole in news articles is also absolutely privileged as unpublished editorial information. *See, e.g.*, *Miller*, 21 Cal. 4th at 890 ("The shield law is *absolute* … in immunizing a newsperson from revealing unpublished information obtained in the newsgathering process"); *Shoen I*, 5 F.3d at 1292; Cal. Evid. Code § 1070(c) ("As used in this section, 'unpublished information' includes information not disseminated to the public by the person from whom disclosure is sought and includes … ***data of whatever sort*** not itself disseminated to the public....") (emphasis added). Mr. Meagher further objects to this Question as being duplicative of Question 8, *inter alia*, and as being an effort to circumvent the protections of the reporters' privilege by reframing a specific question about the Articles as a question about general editorial practice.

**Question 22:**

Do you generally include conjecture in articles you write for The Deal Pipeline?

**Response to Question 22:**

Mr. Meagher objects to this Question since his testimony as to his own general practice of publishing conjecture, if any such practice exists, is irrelevant to Plaintiffs' claims against FINRA since the determination of whether a challenged statement "implies an assertion of objective fact is a question of law." *Steam Press Holdings*, 302 F.3d at 1005. Mr. Meagher further objects that this Question is incapable of leading to the discovery of relevant information because, as Judge Beeler has ruled, topics other than the identity of Mr. Meagher's confidential source(s) "do not bear on [Plaintiffs'] claims against FINRA" and are thus "of limited relevance to the Arizona lawsuit." Order at 2, 3. Simply put, Mr. Meagher's general journalistic practices are not relevant to Plaintiffs' claims against FINRA. Moreover, to the extent this Question is relevant to Plaintiffs' claims against FINRA, it is "because [it] necessarily call[s] for Mr. Meagher to reveal information

1  about his use of confidential sources to research and write his articles," which is also privileged

2  information.  *Id*. at 2.

3       Mr. Meagher's testimony as to his own practice of including conjecture in news articles is

4  also absolutely privileged as unpublished editorial information.  *See, e.g.*, *Miller*, 21 Cal. 4th at 890

5  ("The shield law is *absolute* … in immunizing a newsperson from revealing unpublished

6  information obtained in the newsgathering process"); *Shoen I*, 5 F.3d at 1292; Cal. Evid. Code §

7  1070(c) ("As used in this section, 'unpublished information' includes information not disseminated

8  to the public by the person from whom disclosure is sought and includes … ***data of whatever sort***

9  not itself disseminated to the public....") (emphasis added).  Mr. Meagher further objects to this

10  Question as being duplicative of Question 9, *inter alia*, and as being an effort to circumvent the

11  protections of the reporters' privilege by reframing a specific question about the Articles as a

12  question about general editorial practice.  Last, Mr. Meagher objects to the Question as vague since

13  the meaning of the word "conjecture" is not clear.

14  **Question 23:**

15       Do you generally employ dramatic license in articles you write for The Deal Pipeline?

16  **Response to Question 23:**

17       Mr. Meagher objects to this Question since his testimony as to his own general practice of

18  employing dramatic license, if any such practice even exists, is irrelevant to Plaintiffs' claims

19  against FINRA since the determination of whether a challenged statement "implies an assertion of

20  objective fact is a question of law."  *Steam Press Holdings*, 302 F.3d at 1005.  Mr. Meagher further

21  objects that this Question is incapable of leading to the discovery of relevant information because,

22  as Judge Beeler has ruled, topics other than the identity of Mr. Meagher's confidential source(s)

23  "do not bear on [Plaintiffs'] claims against FINRA" and are thus "of limited relevance to the

24  Arizona lawsuit."  Order at 2, 3.  Simply put, Mr. Meagher's general journalistic practices are not

25  relevant to Plaintiffs' claims against FINRA.  Moreover, to the extent this Question is relevant to

26  Plaintiffs' claims against FINRA, it is "because [it] necessarily call[s] for Mr. Meagher to reveal

27  information about his use of confidential sources to research and write his articles," which is also

28  privileged information.  *Id*. at 2.

Mr. Meagher's testimony as to his own practice of employing dramatic license in news articles is also absolutely privileged as unpublished editorial information. *See, e.g.*, *Miller*, 21 Cal. 4th at 890 ("The shield law is *absolute* … in immunizing a newsperson from revealing unpublished information obtained in the newsgathering process"); *Shoen I*, 5 F.3d at 1292; Cal. Evid. Code § 1070(c) ("As used in this section, 'unpublished information' includes information not disseminated to the public by the person from whom disclosure is sought and includes … ***data of whatever sort*** not itself disseminated to the public....") (emphasis added).  Mr. Meagher further objects to this Question as being an effort to circumvent the protections of the reporters' privilege by reframing a specific question about the Articles as a question about general editorial practice.  Last, Mr. Meagher objects to the Question as vague since the meaning of the phrase "dramatic license" is not clear.

**Question 24:**

Is there anything contained in any of the Articles that you intended to be understood as humorous, flippant, sarcastic, facetious, or otherwise not to be taken literally or serious?

**Response to Question 24:**

Mr. Meagher objects to this Question as irrelevant to Plaintiffs' claims against FINRA since the determination of whether a challenged statement "implies an assertion of objective fact is a question of law." *Steam Press Holdings*, 302 F.3d at 1005.  Mr. Meagher further objects that this Question is incapable of leading to the discovery of relevant information because, as Judge Beeler has ruled, topics other than the identity of Mr. Meagher's confidential source(s) "do not bear on [Plaintiffs'] claims against FINRA" and are thus "of limited relevance to the Arizona lawsuit." Order at 2, 3.  Moreover, to the extent this Question is relevant to Plaintiffs' claims against FINRA, it is "because [it] necessarily call[s] for Mr. Meagher to reveal information about his use of confidential sources to research and write his articles," which is also privileged information.  *Id.* at 2.

Mr. Meagher's testimony as to his whether he intended any statements in the Articles to be "understood as humorous, flippant, sarcastic, facetious or otherwise not to be taken literally or serious [sic]" is also absolutely privileged as unpublished editorial information. *See, e.g.*, *Miller*,

21 Cal. 4th at 890 ("The shield law is *absolute* … in immunizing a newsperson from revealing unpublished information obtained in the newsgathering process"); *Shoen I*, 5 F.3d at 1292; Cal. Evid. Code § 1070(c) ("As used in this section, 'unpublished information' includes information not disseminated to the public by the person from whom disclosure is sought and includes … ***data of whatever sort*** not itself disseminated to the public....") (emphasis added).  Last, Mr. Meagher objects to this Question as an impermissible compound question.

**Question 25:**

What, if anything, in the Articles did you intend to be understood as humorous, flippant, sarcastic, facetious, or otherwise not to be taken literally or serious?

**Response to Question 25:**

Mr. Meagher objects to this Question as irrelevant to Plaintiffs' claims against FINRA since the determination of whether a challenged statement "implies an assertion of objective fact is a question of law." *Steam Press Holdings*, 302 F.3d at 1005.  Mr. Meagher further objects that this Question is incapable of leading to the discovery of relevant information because, as Judge Beeler has ruled, topics other than the identity of Mr. Meagher's confidential source(s) "do not bear on [Plaintiffs'] claims against FINRA" and are thus "of limited relevance to the Arizona lawsuit." Order at 2, 3.  Moreover, to the extent this Question is relevant to Plaintiffs' claims against FINRA, it is "because [it] necessarily call[s] for Mr. Meagher to reveal information about his use of confidential sources to research and write his articles," which is also privileged information. *Id*. at 2.

Mr. Meagher's testimony as to his whether he intended any statements in the Articles to be "understood as humorous, flippant, sarcastic, facetious or otherwise not to be taken literally or serious [sic]" is also absolutely privileged as unpublished editorial information. *See, e.g.*, *Miller*, 21 Cal. 4th at 890 ("The shield law is *absolute* … in immunizing a newsperson from revealing unpublished information obtained in the newsgathering process"); *Shoen I*, 5 F.3d at 1292; Cal. Evid. Code § 1070(c) ("As used in this section, 'unpublished information' includes information not disseminated to the public by the person from whom disclosure is sought and includes … ***data of whatever sort*** not itself disseminated to the public....") (emphasis added).  Mr. Meagher further

objects on the ground that this Question is duplicative of Question 24, *inter alia*.  Last, Mr.

Meagher objects to this Question as an impermissible compound question.


Dated:  April 19, 2017                    DAVIS WRIGHT TREMAINE LLP
                                          THOMAS R. BURKE
                                          ELIZABETH A. MCNAMARA (*pro hac vice*)
                                          JOHN M. BROWNING (*pro hac vice*)

                                          By:    /s/ Thomas R. Burke
                                                 Thomas R. Burke

                                          *Attorneys for Non-Party Journalist William Meagher*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing document has been furnished via e-mail this 19th day of April, 2017 to the following:

Jordan Susman
Charles J. Harder
Dilan A. Esper
Ryan J. Stonerock
HARDER MIRELL & ABRAMS L.L.P.
132 S. Rodeo Drive, Fourth Floor
Beverly Hills, California 90067
JSusman@hmafirm.com
CHarder@hmafirm.com
DEsper@hmafirm.com
rstonerock@hmafirm.com
*Attorneys for Plaintiffs*

Joseph G. Adams
Carlie Tovrea
Snell & Wilmer LLP
One Arizona Center
400 East Van Buren, Suite 1900
Phoenix, Arizona 85004-22020
ctovrea@swlaw.com
jgadams@swlaw.com
*Attorneys for Plaintiffs*

George Brandon
Gregory A. Davis
Gregory Schneider
SQUIRE PATTON BOGGS (US) LLP
One East Washington Street, Suite 2700
Phoenix, Arizona 85004
gregory.schneider@squirepb.com
gregory.davis@squirepb.com
george.brandon@squirepb.com
*Attorneys for Defendants*

Donald A. Wall
Squire Sanders & Dempsey LLP
2 Renaissance Square
40 N. Central Avenue, Suite 2700
Phoenix, AZ 85004-4441
dwall@ssd.com
*Attorneys for Defendants*

/s/ John M. Browning